**Andrea S. KANDT, Plaintiff-Appellant,**

v.

**E. B. EVANS; National Icee, a corporation; and Terry Goldstein, individually, Defendants-Appellees.**

**No. 81SA50.**

Supreme Court of Colorado.

May 24, 1982.

David J. Mintz, William A. Powers, Littleton, for plaintiff-appellant.

Zarlengo, Mott & Zarlengo, Albert E. Zarlengo, Denver, for defendants-appellees.

DUBOFSKY, Justice.

The plaintiff, Andrea S. Kandt, appeals the Denver District Court's summary judgment dismissal of her tort action against her employer and co-employee for intentional infliction of emotional harm suffered in the course of her employment.[1] The district court determined that the Colorado Workmen's Compensation statute, section 8–40–101 et seq., C.R.S.1973 and 1981 Supp. provides the exclusive remedy for the plaintiff's injury and precludes the plaintiff's intentional tort action. We affirm the district court's ruling.

The defendants E. B. Evans and National Icee employed the plaintiff in a sales and marketing capacity, a job which included wearing an "Icee Bear" costume with a large head weighing approximately forty pounds. The defendant Terry Goldstein, also an Icee employee, was the plaintiff's supervisor. On June 9, 1977 the plaintiff in the course of her employment with Icee, suffered serious back and leg injuries in an automobile accident and was unable to return to work until September 21, 1977. When she returned to work, her treating physician, Icee's company doctor, advised her to perform only light duties. Goldstein, however, threatened to fire the plaintiff unless she disregarded the doctor's orders and resumed wearing the Icee bear costume. He also forced her to remain on her feet for long periods of time and to do heavy lifting.

The plaintiff complied with Goldstein's order for approximately one month. During that time her physical condition degenerated, aggravating her injuries. On October 19, 1977 she was again hospitalized for eleven days. Goldstein called her while she was in the hospital and ordered her to return to work or be fired. When she was unable to leave the hospital, she was fired.

The plaintiff then filed a Workmen's Compensation claim against National Icee and its insurer with the Division of Labor. Following a hearing on May 9, 1979, the commission referee found that "the claimant had two injuries, and ... the first injury of June 1977, accounts for her permanent disability." He found that the plaintiff suffered a permanent partial disability of 10% and awarded her compensation of $84.00 a week, up to a maximum of $20,315.57. After the referee entered his order, the plaintiff filed this action against Icee and Goldstein, alleging that Goldstein's conduct was intentional and outrageous and that it had both aggravated her pre-existing injuries and caused extreme mental anguish. The district court granted the defendants' motion to dismiss, holding that the Workmen's Compensation Act constitutes the exclusive remedy available to an employee injured by the intentional tort of a co-employee. The court based its ruling on *Ellis v. Rocky Mountain Empire Sports,* 43 Colo.App. 166, 602 P.2d 895 (1979).

The plaintiff argues that a workmen's compensation award is not a bar to recovery for the intentional tort of a co-employee and that the district court abused its discretion in not holding an evidentiary hearing to determine whether Goldstein was acting within the scope of his employment when he committed the acts which form the basis for the tort claim. She contends that even if the statutory compen-

---

1. This case was transferred from the Court of Appeals under sections 13–4–110(1)(a) and 13– 4–102(1)(b), C.R.S.1973 because the plaintiff raised a constitutional issue, discussed *infra.*

sation precludes recovery against a co-employee, if Goldstein was acting outside the scope of his employment, then he was in the position of a third party and not subject to the statute's exclusivity provisions. We conclude that an employee is not barred from bringing an action for intentional tort against a co-employee if the co-employee's acts were not in the course of employment. However, because the plaintiff failed to make such an allegation, we affirm the district court's dismissal of the action.

■ The Colorado Workmen's Compensation Act (Act) embodies a comprehensive scheme for compensation to employees of participating employers for job-related injuries. *Vanadium Corp. of America v. Sargent*, 134 Colo. 555, 307 P.2d 454 (1957). Compensation under the Act does not require proof of fault. Section 8–52–102, C.R.S.1973 (1981 Supp.) provides that compensation is awarded in all cases when the following conditions occur:

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted.

In addition, under section 8–42–101, C.R.S. 1973, an employer's common law defenses to liability are abrogated.

Recovery under the Act is meant to be exclusive and to preclude employee tort actions against an employer. Section 8–42–102, C.R.S.1973 (1981 Supp.) provides:

An employer who has complied with the provisions of articles 40 to 54 of this title, including the provisions relating to insur-

ance, shall not be subject ... to any other liability for the death of or personal injury to any employee, except as provided in said articles; and all causes of action, actions at law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of [the] death of or personal injury to any ... employee and accruing to any person are abolished except as provided in said articles.

Similarly, section 8–43–104, C.R.S.1973 (1981 Supp.) states that acceptance of the scheme constitutes a surrender of other remedies by both employer and employee:

An election under the provisions of section 8–41–105(5) and in compliance with the provisions of articles 40 to 54 of this title, including the provisions for insurance, shall be construed to be a surrender by the employer, his insurance carrier, and the employee of their rights to any method, form, or amount of compensation or determination thereof or to any cause of action, action at law, suit in equity, or statutory or common-law right, remedy, or proceeding for or on account of such personal injuries or death of such employee other than as provided in said articles, and shall be an acceptance of all the provisions of said articles. . . .

These exclusivity provisions constitute part of the *quid pro quo* of workmen's compensation schemes, under which the employer assumes liability for work-related injuries irrespective of fault, and in return, employees are precluded from bringing actions at common law. 2A *Larson, Workmen's Compensation Law* § 65.10 at 12–1 to 12–4 (1976). The Act recognizes that third persons are not parties to this bargain and thus should not be protected from common law liability for injuries they cause. Section 8–52–108, C.R.S.1973.

The Act is silent on the issue of whether it provides for recovery for intentional torts. Prior to its amendment in 1975, section 8–52–102, C.R.S.1973 provided that an employee was entitled to compensation

for any personal injury *accidentally* sustained or death resulting therefrom...

(a) Where, at the time of the *accident*, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the *accident*, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an *accident* arising out of and in the course of his employment and is not intentionally self-inflicted.

(Emphasis added.) "Accident" was defined in section 8–41–108(1), C.R.S.1973 as:

an unforeseen event occurring without the will or design of the person whose mere act causes it; an unexpected, unusual, or undesigned occurrence; or the effect of an unknown cause or, the cause being known, an unprecedented consequence of it.

Some of this Court's older decisions interpreted the word "accident" in the Act to preclude employee recovery under the Act for intentional wrongs. In *Keating v. Industrial Commission*, 105 Colo. 155, 95 P.2d 821 (1939),

"In Workmen's Compensation Acts, ... injuries are designated 'accidents,' to distinguish them from intentional injuries and injuries caused by disease." *Central Surety Corp. v. Industrial Comm.*, 84 Colo. 481, 271 P. 617, 621 [1928].

95 P.2d at 822.

However, even the *Central Surety* case on which we relied in *Keating* recognized that an "accidental" injury is merely one which "the sufferer did not intend or expect ... would on that particular occasion result from what he was doing." 84 Colo. at 486, 271 P. 617. Subsequent decisions have construed "accident" expansively to cover a variety of work-related incidents and conditions. *See, e.g., Wesco Electric Co. v.*

*Shook*, 143 Colo. 382, 353 P.2d 743 (1960); *University of Denver v. Nemeth*, 127 Colo. 385, 257 P.2d 423 (1953). In *Wisdom v. Industrial Commission*, 133 Colo. 266, 293 P.2d 967 (1956), this Court declared that an employee's injuries from an assault by a co-employee are compensable under the Act, as long as they "arise out of" the employment. *Accord Alpine Roofing Company v. Dalton*, 36 Colo.App. 315, 539 P.2d 487 (1975). *See Packaging Corporation of America v. Roberts*, 169 Colo. 316, 455 P.2d 652 (1969); *Industrial Commission v. Strome*, 107 Colo. 54, 108 P.2d 865 (1940).

The Tenth Circuit, interpreting language in the Oklahoma workmen's compensation statute, held that "accident" includes the willful or criminal acts of another, since, from the victim's point of view, these are just as unexpected and unforeseeable as are industrial accidents. *Arrington v. Michigan-Wisconsin Pipeline Co.*, 632 F.2d 867 (10th Cir. 1980). *Accord Sands v. Union Camp Corp.*, 559 F.2d 1345 (5th Cir. 1977) (interpreting "accident" in Georgia statute). *See Larson, supra*, § 68.12 at 13–4.

In 1975, the General Assembly amended section 8–52–102, replacing the word "accident" wherever it occurred with "injury" and explicitly including a reference to occupational diseases, which statutory provisions and court decisions had previously excluded from compensation under the definition of "accident." Colo.Sess.Laws 1975, ch. 71, 8–52–102 at 304–05. We find that these amendments had the effect of broadening the scope of compensable injuries under the Act.. They reinforce the conclusion that intentional wrongs arising out of the course of the employment are covered under Colorado's compensation scheme.

Consistent with this interpretation, the Court of Appeals held in *Ellis v. Rocky Mountain Empire Sports, supra*, that injuries resulting from intentional infliction of emotional harm would be compensable under the Act. In *Ellis*, the plaintiff, a professional football player, brought an action against his employer, the Denver Broncos,

and against the Bronco's head coach, alleging that they required him to engage in contact football drills before he had fully recovered from an off-season knee injury. The player argued that the exclusivity provisions of the Act did not preclude his claim against the coach and the Broncos for intentional infliction of emotional distress and outrageous conduct. The appeals court disagreed, stating:

> Contrary to Ellis' argument, intentional torts are covered under the Act, and compensation awards may be made for injuries suffered from intentional acts of co-employees. *See Packaging Corporation of America v. Roberts*, 169 Colo. 316, 455 P.2d 652 (1969); *Alpine Roofing Co. v. Dalton*, 36 Colo.App. 315, 539 P.2d 487 (1975). We therefore hold that Ellis' exclusive remedy for his negligence and intentional tort claims is as provided for under the Workmen's Compensation Act, and he is barred from bringing this common law action for his injury.

The exclusivity provisions of the Act, sections 8–42–102 and 8–43–104, preclude common law actions against an employer for injuries which are compensable under the Act, as does section 8–52–102, C.R.S.1973 (1981 Supp.), which sets out the conditions under which "[t]he right to the compensation provided for in [the Act], *in lieu of any other liability to any person*" will be available. (Emphasis added.) In *Packaging Corporation of America v. Roberts, supra*, we held that statutory compensation for injuries resulting from a co-employee's assault within the course of the employment would preclude a tort action against the injured employee's employer. Exclusivity provisions similar to those contained in Colorado's workmen's compensation statute almost universally have been held to bar common law actions against an employer for intentional torts committed by co-employees. *Larson, supra*, § 68.21 at 13–10; *Gallegos v. Chastain*, 95 N.M. 551, 624 P.2d 60 (1981); *Elliott v. Brown*, 569 P.2d 1323 (Alaska 1977); *Bryan v. Utah International*, 533 P.2d 892 (Utah 1975). *See Eason v. Frontier Air Lines, Inc.*, 636 F.2d 293 (10th Cir. 1981).

While some justification exists for not interpreting the exclusivity provisions to bar intentional tort actions where it is the employer personally, or someone who is the alter ego of the employer, who commits the tort, there is no similar justification for holding the employer liable for employee intentional acts solely under the principle of respondeat superior. As explained in *Larson, supra*, § 68.21 at 12–11:

> The legal reason for permitting the common-law suit for direct assault by the employer ... is that the same person cannot commit an intentional assault and then allege it was accidental. This does not apply when the assailant and the defendant are two entirely different people. Unless the employer has commanded or expressly authorized the assault, it cannot be said to be intentional from his standpoint any more than from the standpoint of any third person. Realistically, it to him is just one more industrial mishap in the factory, of the sort he has a right to consider exclusively covered by the compensation system.

The fact that Goldstein was the plaintiff's supervisor does not make him the alter ego of the employer. *See Elliott v. Brown, supra; Larson, supra* § 68.22. Under the facts of this case, the plaintiff's action against her employer, National Icee, is barred by the Act's exclusivity provisions.

■ We now turn to the question whether the plaintiff's action against Goldstein is also barred by recovery under the Act. No statutory provision explicitly provides for co-employee immunity. However, section 8–52–108, C.R.S.1973, which allows an employee injured by a third party to pursue common law remedies implies such an immunity by allowing the option to sue *only* in those cases where the employee "is injured or killed by the negligence or wrong *of another not in the same employ*." (Emphasis added.)

Decisions interpreting this provision have established the immunity of co-employees "for injuries sustained when both are acting within the course of their employment." *Sieck v. Trueblood,* 29 Colo.App. 432, 485 P.2d 134 (1971); *Nelson v. Harding,* 29 Colo. App. 76, 480 P.2d 851 (1980). *See Hamblen v. Sante Fe Trail Transp. Co.,* 101 F.Supp. 799 (D.Colo.1951) (joinder of fellow employee in action against third party barred by immunity doctrine).

While none of these cases involved intentional torts, the majority of jurisdictions have interpreted similar statutory provisions to exclude co-employees from the category of "third persons" liable in tort for injuries to an employee for intentional, as well as negligent acts. *Larson, supra,* § 72.21 at 14–73 to 14–81 (and cases cited therein). *Contra, e.g., Elliott v. Brown, supra; Bryan v. Utah International, supra.* A rationale for the majority approach is given in *Larson, supra,* § 72.22 at 14–86, which explains that co-employee immunity is based on

> the *quid pro quo* by which the employer gives up his normal defenses and assumes automatic liability, while the employee gives up his right to common-law verdicts. This reasoning can be extended to the tortfeasor coemployee; he, too, is involved in this compromise of rights.... [O]ne of the things he is entitled to expect in return for what he has given up is freedom from common-law suits based on industrial accidents in which he is at fault.

Further, the co-employee rule is consistent with the aim of workmen's compensation schemes to spread the cost of hazards of the workplace, one of which is intentional interference with an employee's legal interests by a fellow employee.

Decisions which have adopted the minority view point out that immunity would allow a worker who commits an intentional tort to use the compensation law as a shield against liability, and would eliminate the beneficial deterrent effect of the threat of such liability for intentional torts. *Elliott v. Brown, supra; Bryan v. Utah International, supra. See Larson, supra,* § 72.12 at 14–59 to 14–61. However, these arguments extend as well to co-employee liability for negligence, and yet the vast majority of jurisdictions, whether by statute or judicial interpretation, have insulated co-employees from liability for their own negligence. *Larson, supra,* § 72.21. Moreover, co-employee immunity for intentional wrongs is strictly limited to injuries sustained where both the tortfeasor and the victim are acting in the course of their employment. *See Sieck v. Trueblood, supra; Nelson v. Harding, supra.* Thus, the deterrent function of tort liability would be preserved as to those acts between employees not "arising out of and in the course of" the employment relation. Section 8–52–102, C.R.S. 1973 (1981 Supp.).

In the instant case, the district court normally would have been required to scrutinize Goldstein's acts to determine, under the appropriate standard, whether he was acting in the course of his employment in allegedly harassing the plaintiff into re-injuring her back and causing her emotional distress.[2] However, the plaintiff specifically alleged in her complaint that Goldstein "at all times referenced herein was employed by and acting within the scope of his employment as an employee for the defendant National Icee." The plaintiff never amended the complaint or filed affidavits to allege that Goldstein was acting outside the scope of his employment. Since the character of Goldstein's actions was never in dispute, the district court was justified in dismissing the plaintiff's action without holding an evidentiary hearing to determine

**2.** For language and factual situations relevant to determining whether acts are within the course of employment, *see Packaging Corp. of America v. Roberts,* 169 Colo. 316, 455 P.2d 652 (1969); *University of Denver v. Nemeth,* 127 Colo. 385, 257 P.2d 423 (1953); *Alpine Roofing Company v. Dalton,* 36 Colo.App. 315, 539 P.2d 487 (1975); *Sieck v. Trueblood,* 29 Colo.App. 432, 485 P.2d 134 (1971).

whether Goldstein was acting outside the course of his employment.

 The plaintiff also contends that a construction of the Act which precludes her bringing an intentional tort action against a co-employee violates due process and equal protection and the right of access to the courts guaranteed by *Colo.Const.* Art. II, § 6. This Court in the past has upheld the Act against constitutional challenges based on the statute's abrogation of a claimant's common law rights. *Olson v. Public Service Company*, 190 Colo. 512, 549 P.2d 780 (1976); *O'Quinn v. Walt Disney Productions*, 177 Colo. 190, 493 P.2d 344 (1972); *Finn v. Industrial Commission*, 165 Colo. 106, 437 P.2d 542 (1968). *See* 81 *Am.Jur.2d*, Workmen's Compensation §§ 10, 21 (1976). That the General Assembly amended provisions of the Act to make it compulsory rather than elective does not affect the constitutionality of the Act's elimination of common law rights, as long as an adequate statutory remedy is supplied. *Larson, supra* § 67.30; 81 *Am.Jur.2d, supra* § 21. *See Ryan v. Centennial Race Track, Inc.,* 196 Colo. 30, 580 P.2d 794 (1978) (and cases cited therein). We find these authorities dispositive of the constitutional issue raised by the plaintiff.

Judgment affirmed.