**Sheila BENNETT, Plaintiff,**

v.

**FURR'S CAFETERIAS, INC., and William Andrews, Defendants.**

Civ. A. No. 81–JM–1459.

United States District Court, D. Colorado.

Oct. 28, 1982.

Leo Gemma, Jr. and Terry Tomsick, Denver, Colo., for plaintiff.

Carol Welch, Deana Willingham, Denver, Colo., for defendant Furr's.

William H. Hazlitt, Bonnie J. McClaren, Denver, Colo., for defendant Andrews.

## MEMORANDUM OPINION AND ORDER

JOHN P. MOORE, District Judge.

This is a Title VII action in which the Plaintiff has asserted pendent claims for assault and battery and outrageous conduct. Defendants, Furr's Cafeterias, Inc., (Furr's) and William Andrews, have moved for summary judgment dismissing these state law claims as precluded by the Colorado Workmen's Compensation Act [1] and, with respect to the assault and battery claim, the applicable statute of limitations.[2] I conclude that the motions should be granted in part and denied in part.

In early February of 1980, the Plaintiff was hired by Defendant Furr's as a "management trainee." Defendant Andrews was her immediate supervisor. Ms. Bennett's complaint centers upon two incidents involving her and Defendant Andrews.[3]

The first of these incidents is alleged to have occurred in February of 1980 in connection with a three-day "inspection trip" to the Grand Junction Furr's Cafeteria. According to the Plaintiff,[4] she and two male trainees left Colorado Springs in the company of Defendant Andrews on a Monday morning. The party arrived in Grand Junction late that afternoon and proceeded directly to the cafeteria, where they found the local management hard pressed for help. Andrews directed Plaintiff's colleagues to assist while he and Ms. Bennett (who had little or no training at the time)

---

1. Section 8–40–101, et seq., C.R.S.1973 (as supplemented).

2. Section 13–80–102, C.R.S.1973.

3. Other incidents are alleged but need not be discussed for purposes of this decision.

4. Deposition of Sheila Bennett, February 1, 1982, at pp. 35–44, 287, 289, 291, 292, and 293.

had something to eat. When it became apparent that the others would be occupied for a substantial period, Andrews suggested that he and Bennett pass the time "down the street." Bennett deposition at 39. Bennett concurred. The two had a drink at a local bar and returned to the cafeteria. Upon finding the trainees still busily engaged, Andrews told Bennett that he would take her to the motel at which the group was registered. According to Bennett, Andrews had no sooner parked at the motel when he began to make vigorous sexual advances, suggesting that they "go in [her] room and have a party for awhile ...." Bennett deposition at 39. Bennett demurred and proceeded to her room alone. Andrews then phoned Bennett, apologized, and added that she should not relate the incident as his family was well connected with Furr's and "nobody would ever believe you ...." Bennett deposition at 40. Although he continued to express an interest in her company, Bennett experienced no further physical difficulties with Andrews during the remainder of the trip.

The second incident is alleged to have occurred in May of 1980. According to the Plaintiff,[5] Andrews appeared at the Colorado Springs cafeteria where she was in training and announced that they were to inspect a problem at the Pueblo cafeteria. Bennett apparently had no prior knowledge of the arrangement but was not surprised by the request since the matter was described as specific. Upon arriving at the cafeteria, Andrews introduced Bennett to the manager and, shortly thereafter, asked her to leave the meeting. Andrews emerged from the manager's office some 30 minutes later and, accompanied by Bennett, proceeded to inspect and adjust various items of equipment. The parties then ate lunch at the cafeteria and commenced the return trip to Colorado Springs. As they approached the city's outskirts, Andrews told Bennett that he wished to show her his "glider port." Without further ado, he proceeded down a road leading to the town of Yoder (situated 27 miles east of the main

highway), where, upon engaging in a cursory inspection of the property, the parties (at Andrews' behest) decided to continue down a dirt road to see if some of the fences were down. This road had apparently not been cleared of snow, and, unfortunately, the car became stuck in a drift. Andrews' reaction to this predicament (again, according to Bennett) was one of amusement, followed by a forceful sexual assault upon Bennett. Bennett managed to elude his advances and started back up the road for help. Andrews joined her and allegedly made further physical advances while the two were walking and, later, while they waited at the car for the help they had contacted to arrive. The car was eventually freed, and the parties returned to Colorado Springs without further incident.

Plaintiff was appointed to the position of "Second Assistant Manager" for the Grand Junction Furr's Cafeteria in May of 1980 and resigned in July of 1980 for reasons which are a matter of dispute. On December 12, 1980, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff was noticed of her right to sue early in July of 1981. The complaint in this action was filed on August 17, 1981, and avers that "[i]n doing the things hereinafter alleged, Andrews was acting within the scope of his employment relationship with Furr's and was acting with the permission and consent of Furr's."

I

■ The bar of workmen's compensation extends only to actions founded upon injuries compensable under the Act. Sections 8–42–102 and 8–52–102, C.R.S.1973 (1981 Supp.); see, also, Packaging Corp. of America v. Roberts, 169 Colo. 316, 455 P.2d 652 (1969); Alexander v. Morrison-Knudsen Company, 166 Colo. 118, 444 P.2d 397 (1968), cert. denied, 393 U.S. 1063, 89 S.Ct. 715, 21 L.Ed.2d 706 (1969). An injury resulting from an act or omission of the employer is compensable "where the necessary employer-employee relationship exists and both the

---

**5.** Bennett deposition, supra, at 58–68, 304, 306, 311–312.

service being performed and the injury sustained arise out of and in the course of employment." (Citation omitted.) *Johnson v. Industrial Commission of Colorado,* 137 Colo. 591, 328 P.2d 384, 387 (1958); § 8–52–102, C.R.S.1973 (1981 Supp.). Cognizant of the Act's broad remedial objective, the Colorado courts have interpreted this standard of compensation to include injuries arising from the intentional acts of a co-employee,[6] as long as the requisite degree of job relatedness is present. *Kandt v. E.B. Evans,* Colo., 645 P.2d 1300, The Brief Times Reporter, Vol. VI, p. 408 (S.Ct.1982); *Ellis v. Rocky Mountain Empire Sports, Inc.,* 43 Colo.App. 166, 602 P.2d 895 (1979). As formulated by the *Kandt* court:

> [C]o-employee immunity for intentional wrongs is strictly limited to injuries sustained where both the tort feasor and the victim are acting within the course of their employment. (Citation omitted.) Thus, the deterrent function of tort liability would be preserved as to those acts between employees not "arising out of and in the course of" the employment relation. Section 8–52–102, C.R.S.1973 (1981 Supp.).[7]

An injury "arises out of" the employment relation when it has been caused by employment related risks.[8] An injury is suffered "in the course of" employment when "the time, place, and circumstances of the injury were not so remote from the purposes of [the claimant's] employment that the act in which he was engaged when injury occurred must be considered one for [his] benefit ... only."[9]

■ It is therefore apparent that, regardless of the manner in which Defendant Andrews' acts may be characterized, Plaintiff's state law claims will be barred as a matter of law only if there can be no question but that her injuries arose out of and in the course of her employment relationship with Furr's. The Colorado courts have repeatedly emphasized that determination of this issue is largely dependent upon the facts surrounding the injury in question. *City and County of Denver, Etc. v. Industrial Comm.,* 196 Colo. 131, 581 P.2d 1162 (1978); *Wisdom v. Industrial Commission,* 133 Colo. 266, 293 P.2d 967 (1956); *Deterts v. Times Publishing Company,* 38 Colo.App. 48, 552 P.2d 1033 (1976); *Alpine Roofing Co. v. Dalton,* 36 Colo.App. 315, 539 P.2d 487 (1975). Of course, the facts of the instant matter have received little development. Moreover, those facts which appear of record are hardly favorable to the Defendants. Indeed, it would appear to lie outside the bounds of reason to propose that the sort of sexual assault and harassment heretofore described and the emotional trauma alleged to have been caused thereby result from risks inherent to the position of a "management trainee." While a somewhat closer case may be posed with regard to the "course" requirement, I find totally incredible Defendants' bland assertion that Bennett's actions (if any there were) leading to the alleged assaults lie within the course of her employment because she was obligated to go on inspection trips in the first instance. Deviation from the straight and narrow must, at some point, become so remote from the purposes of employment as to be of no tangible benefit to the employer, if anyone.

■ In my opinion, Defendants' assertions to the contrary rest upon a specious

---

6. It is unclear at present whether and to what extent Colorado workmen's compensation covers injuries arising from intentional wrongs perpetrated by the employer personally. While it expressed some reservation regarding this application of the immunity, the *Kandt* court [*Kandt v. E.B. Evans,* Colo., 645 P.2d 1300, The Brief Times Reporter, Vol. VI, p. 408 (S.Ct. 1982)] was not faced with the necessity of deciding it. Because I conclude that the instant matter involves a genuine factual controversy with respect to the threshold requirement of

job relatedness, I, too, decline to reach the question.

7. *Supra,* at 410.

8. *Industrial Commission v. Employers Casualty Company,* 136 Colo. 396, 318 P.2d 216 (1957). *Wisdom v. Industrial Commission,* 133 Colo. 266, 293 P.2d 967 (1956); *Deterts v. Times Publishing Company,* 38 Colo.App. 48, 552 P.2d 1033 (1976).

9. *Deterts, supra,* at 1036.

application of case authority. While it is true that an employee in "travel status" is normally acting in the course of employment from the time the employee leaves home until the time the employee returns,[10] it is equally evident that this definition of the "course" requirement does not abrogate the need for casual relation between the action or occurrence resulting in injury and the purposes of the employment in question. *Tatum-Reese Development Corp. v. Industrial Commission,* 30 Colo.App. 149, 490 P.2d 94 (1971); *Archer Freight Lines, Inc. v. Horn Transportation, Inc.,* 32 Colo.App. 412, 514 P.2d 330 (1973). Needless to say, the present record evinces substantial controversy regarding this threshold condition.

Defendants' reliance upon *Kandt, supra,* is equally misplaced. In that instance, the Plaintiff had received an award prior to filing suit for outrageous conduct against her employer and supervisor. Kandt's complaint did not assert that the supervisor's acts lay outside the scope of his employment. Thus, no factual issue was presented as to the job relatedness of her injuries. In addition, those facts related by the court clearly indicate that Kandt's injuries were employment related.[11]

I conclude that the present record discloses a substantial controversy regarding the job relatedness of Plaintiff's injuries. At base, Plaintiff contends that the Defend-ants used her employment as a pretext for repeated acts of sexual assault and harassment. I cannot credit the suggestion that the Colorado General Assembly intended to permit licentious behavior under the rubric of workmen's compensation, and, therefore, I consider it only just that the Plaintiff be allowed to make her case on the facts. The motion for summary judgment shall be denied insofar as it is premised upon the bar of workmen's compensation.[12]

## II

Section 13–80–102, C.R.S.1973 provides that "[a]ll actions for assault and battery ... shall be commenced within one year after the cause of action accrues, and not afterwards." As indicated previously, Plaintiff's last contact with the Defendants occurred at the time of her resignation in July of 1980. This action was not instituted until August 17, 1981. Defendants therefore contend that Plaintiff's claim of assault and battery is time barred under the one-year limitation of § 102. Plaintiff argues this limitation period was suspended between December of 1980 and July of 1981 by the filing of her charge of discrimination with the EEOC.[13] I disagree.

Plaintiff's pendent action for assault and battery derives exclusively from the law of Colorado and is therefore governed by that

---

**10.** *Tatum-Reese Development Corp. v. Industrial Commission,* 30 Colo.App. 149, 490 P.2d 94 (1971).

**11.** Defendants contend that *Kandt* is indistinguishable from the instant case as regards the issue of job relatedness since the complaint centered on a phone call from her supervisor threatening Kandt with termination should she fail to return to work after being hospitalized for injuries sustained on the job. It is argued that if this act (and the resulting injury) were sufficiently job related to invoke the bar of workmen's compensation, so, too, are the alleged acts and injuries at bar. There is no indication, however, that Kandt intended to rely solely on the phone call. Other clearly job related acts were asserted. More importantly, it is obvious that, among other things, the job of a supervisor is to hire and fire, that the act of being terminated falls within the course of employment, and that trauma resulting from termination is a risk inherent to employment.

*See, e.g., Packaging Corp. of America v. Roberts, supra;* and *Alpine Roofing Co. v. Dalton, supra.*

**12.** In so holding, I do not pass upon Plaintiff's assertion that her private right of action under §§ 8–3–108(1) and 121(1), C.R.S.1973 (1981 Supp.) survives the bar of workmen's compensation.

**13.** Citing *Salazar v. Dowd,* 256 F.Supp. 220 (D.Colo.1966), Plaintiff argues in the alternative that the appropriate limitations period is the two-year provision of § 13–80–106, C.R.S. 1973. By its terms, this statute applies only to "actions upon a liability created by federal statute ...." Plaintiff's common law assault and battery claim hardly fits within this class. *Salazar* provides little solace to Plaintiff inasmuch as the court there held only that § 106 controlled the institution of a § 1983 claim *premised upon* an alleged assault and battery.

state's law of limitations.[14] The Colorado legislature has defined circumstances under which a limitations period will be tolled.[15] Initiation of a federally created and controlled administrative action is not among them, nor has it been implied by the Colorado judiciary. In such a case, it is the job of this court to "construe the law of the state of Colorado in the manner in which the Supreme Court of Colorado would, if faced with the same facts and issues."[16] (Citation omitted.) In so doing, I "may look to all resources, including decisions of other states, as well as Colorado and federal decisions, and to the general weight and trend of authority."[17] (Citation omitted.)

The Colorado courts have recognized that statutes of limitation embody weighty considerations of public policy and, therefore, statutory "exceptions are to be strictly construed." *Dodge v. Montrose Potato Growers Cooperative Assn.,* 34 Colo.App. 223, 524 P.2d 1394, 1396 (1974); *Van Diest v. Towle,* 116 Colo. 204, 179 P.2d 984 (1947); *see, also, Chuchuru v. Chutchurru,* 185 F.2d 62 (10th Cir.1950). It should come as no surprise, then, to find that these courts have been quite hesitant to "find" exceptions to the legislative scheme. In *Miller v. Industrial Comm.,* 106 Colo. 364, 105 P.2d 404 (1940), for example, the Colorado Supreme Court

was faced with the question of whether the period for filing claims with the state agency responsible for the administration of workmen's compensation benefits ought to be tolled during a claimant's minority. The court acknowledged that no such exception existed by statute and concluded that it was powerless to create one. "The resulting harshness in depriving the minors of these benefits is apparent. The question, however, is controlled by legislative will and not by judicial power."[18] While this result might be explained as due in some measure to the fact that the subject proceedings had been committed in the first instance to an administrative agency,[19] a review of relevant case law convinces me that it is emblematic of the Colorado court's attitude on the subject. Thus, that court has refused to afford extrastatutory relief from the bar of limitations except where necessary to avoid placing a judicial imprimatur on culpable behavior. *Compare Klamm Shell v. Berg,* 165 Colo. 540, 441 P.2d 10 (1968), *with Dodge, supra; see, also, Crownover v. Gleichman,* 194 Colo. 48, 574 P.2d 497 (1977), *cert denied* 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978). This attitude is in keeping with the general hesitancy of courts to judicially except cases from applicable limitations statutes[20] and is of a piece

14. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Ragan v. Merchants Transfer & Warehouse Co.,* 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520 (1949); 1A *Moore's Federal Practice* ¶ 0.305[3], at 3047–3052 (1982 ed.).

15. *See, e.g.,* §§ 13–80–115, 116, 126, 128; §§ 13–81–103, 104, 106, C.R.S.1973 (as supplemented).

16. *City of Aurora, Colo. v. Bechtel Corp.,* 599 F.2d 382, 386 (10th Cir.1979).

17. *Ibid.*

18. *Miller, supra,* at 405. The Colorado Workmen's Compensation Act was subsequently amended to allow the Commission discretionary authority to lift the time bar in cases evidencing "reasonable excuse." *Industrial Comm. v. Newton Lumber & Mfg. Co.,* 135 Colo. 594, 314 P.2d 297, 300–301 (1957).

19. *See, however, Greely Gas and Fuel Company v. Thomas,* 87 Colo. 486, 288 P. 1051 (1930).

20. *See* Am.Jur.2d *Limitations of Actions* §§ 138, 139. In a departure from this general trend, the California courts have applied a doctrine of "equitable tolling" in cases where the defendant receives timely notice of the claims under review by means of an administrative action commenced reasonably and in good faith by a plaintiff possessing a choice of remedies or forums. *See, e.g., Elkins v. Derby,* 12 Cal.3d 410, 525 P.2d 81 (1974). The scope of this doctrine is unclear, and, consequently, I am unsure of its application to the instant matter. *Compare Addison v. State,* 21 Cal.3d 313, 146 Cal.Rptr. 224, 227, 578 P.2d 941 (1978), *with Sierra Club v. Cal. Coastal Com'n.,* 95 Cal. App.3d 495, 157 Cal.Rptr. 190, 195 (1979). More importantly, however, I think it probable that the Colorado court's attitude toward separation of powers militates against its acceptance of this doctrine. This, of course, is a matter of conjecture; but here, as elsewhere, litigants are bound to accept probability in place of certainty.

with the Colorado court's general approach to the problem of "judicial legislation."[21]

Against this backdrop of judicial constraint, I feel obligated to rule that Plaintiff's EEOC action did not operate to toll the one-year limit of § 102.[22] In so concluding, I would remark that while the Plaintiff makes a strong argument based upon the policy of notice, it is less than certain that her EEOC action put the Defendants on fair warning of the assault and battery claim, inasmuch as that proceeding contemplated relief other than damages for tort and did not directly involve Defendant Andrews. It is, therefore,

ORDERED that the Defendants' motions for summary judgment are granted insofar as they seek dismissal of Count IV of the complaint. The motions are denied in all other respects.

---

**21.** In *Tompkins v. DeLeon,* 197 Colo. 569, 595 P.2d 242 (1979), the court made clear its preference for "plain language." The issue on appeal was whether plaintiffs could testify to pain, suffering, and medical care incurred prior to the demise of defendant's deceased. Colorado's Dead Man's Statute excepted testimony as "to facts occurring after the death of such deceased person." 595 P.2d at 243. The court of appeals held that the testimony should be allowed as it presented no threat to the object of the statute. The Supreme Court reversed in language which is instructive here:

[T]here is no room for judicial modification here.

. . . .

. . . It may be correct that in this instance admission of the testimony might not have materially obstructed the purposes of the statute. Nonetheless, we agree with the dis-

senting opinion of the court of appeals that the courts have an obligation to apply the clear language of the statute. 595 P.2d at 244.

**22.** Plaintiff argues that "[f]ailure to toll the statute of limitations . . . would vitiate the humane purpose of Title VII which embraces the strong federal policy in support of conciliation and voluntary compliance . . . ." Plaintiff's brief at 2. This argument has been answered in substance by the Supreme Court's opinion in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). In addition, I found no support for the proposition that the EEOC charge constituted the filing of a "complaint" within the meaning of Colo.R. Civ.P. 3. *See Styers v. Mara,* 631 P.2d 1138 (Colo.App.1981).