No. 18,367.

INDUSTRIAL COMMISSION OF COLORADO, ET AL. *v.*
EMPLOYERS CASUALTY COMPANY, ET AL.
(318 P. [2d] 216)

Decided November 18, 1957.   Rehearing denied December 9, 1957.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK
E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for
plaintiff in error Industrial Commission of Colorado.

Messrs. WORMWOOD, O'DELL & WOLVINGTON, for de-
fendants in error.

*En Banc.*

MR. CHIEF JUSTICE MOORE delivered the opinion of the Court.

THIS is an Industrial Commission case in which the district court set aside an award of compensation for loss of vision allegedly sustained by James E. Lee in the course of his employment by Beckman, Inc.

Claimant was employed as a driller in oil well operations. At the time he was injured he was on the floor of a "rig" which was about eight feet above the ground. Three other employees, all minors, were on the ground below him. Claimant also was a minor, aged 19. He testified in part:

"Well, we were waiting on orders and I was standing on the floor and three other boys were standing on the ground and there was two rolls of pipe on the side of the derrick and a rock hit the pipe and glanced over and hit me."

Leonard Goad, one of the boys below, playfully threw the rock at claimant on the platform. The rock glanced off the pipe hitting claimant in the eye. He had thrown no rocks and had not engaged in any "horseplay" in any manner connected with the accident. The only rock thrown was the one which struck him. He suffered a perforating laceration of the cornea with resultant traumatic cataract. Corrective surgery was performed; nevertheless claimant is industrially blind in that eye.

Claimant went to work at 11:30 P. M. He was supposed to stay on the rig until 7:30 the next morning. The accident occurred about 7:00 o'clock. The boys had been working on the rig, "washing it down," until about five or ten minutes before the accident. At the exact time of the accident they were "waiting on orders" from the foreman who had gone to breakfast. During the night they had "washed down the rig, cleaned up the location and laid a few pipe line and cleaned the cavings out of the mud tank, sand and rock." Claimant testified, inter alia, that:

"We were waiting on Halliburton to come and cement the well. Q. How long had you waited? A. Oh, we had been waiting approximately seven hours. * * * Q. How long had you been at the well? A. Well, we were washing down the rig. We had been there about an hour."

The referee entered findings of fact and determined that at the time and place of the accident claimant was performing services arising out of and in the course of his employment. Compensation was awarded by the Commission according to the amount shown to be due by the evidence (concerning which there is no issue here). The district court set aside the award of the Commission and claimant, seeking reversal, brings the cause here by writ of error.

Question to be Determined.

*Where an employee while on duty suffers an injury which is caused by playful actions of a fellow employee, in which the injured person was not a participant; can such injured workman recover compensation for accidental injury "arising out of and in the course of his employment," under pertinent provisions of the Workmen's Compensation Law?*

█ The question is answered in the affirmative. The law relating to the question involved in this matter is contained in two cases previously determined by this Court. They are *McKnight v. Houck,* 87 Colo. 234, 286 Pac. 279; and *Gates Rubber Co. v. Industrial Commission,* 112 Colo. 480, 150 P. (2d) 301.

In the McKnight case, supra, the claimant was employed as a ranch hand. He and a fellow employee were required by their employment to be armed with pistols. While on their way to the bunkhouse each drew his gun to see which one could draw the quicker and somehow the fellow employee's gun went off and shot the claimant. There was no malice involved. The Commission found that no compensation was due, which finding was affirmed by the district court. The ques-

tion brought to this court was, whether the accident arose out of the claimant's employment. The court held, in affirming the award of the Commission:

"This gun play was no part of the duties of the boys and there is no evidence that their employer had knowledge of such previous practice. The two had stepped aside from their employment and were amusing themselves in a manner utterly foreign to it. This was no industrial accident. It is entirely unrelated to those cases in which an employee, attending to his duties, is murdered by a third person. Neither is there here any question of non-participation of deceased in the play, nor or the acquiescence of the employer."

The Gates case, supra, presented somewhat different facts. There the claimant was employed in the processing of rubber. While his machine was stopped for adjustment he seated himself on a roller. Another employee, in a spirit of play, gave the roller a spin and threw the claimant backward injuring his back. The Commission awarded compensation to claimant, which award was sustained by the district court. The only issue raised in this court was whether the accident arose out of claimant's employment. This court affirmed the award of the Commission. In the opinion so holding, a discussion appears of two lines of authority, under one of which such accidents are held to arise out of the employment, and under the other they are held not to arise out of the employment.

"In the instant case no criminal intent or act is suggested by the facts; they show merely a thoughtless, careless, unconsidered act by the fellow employee that undesignedly and unfortunately resulted in claimant's injury. From claimant's standpoint the injury occured not only while he was employed, but because he was employed and engaged in the work he had been directed to do. He was where he had a right to be; he was discussing the work with his fellow employee at the machine and waiting for expert help to clear up their dif-

ficulties; he was doing the natural thing for a workman during the temporary intermission—sitting on an available object near the machine. He had no authority, so far as the record discloses, to hire or control other employees in the plant. He was merely one workman among many, doing the work he was directed to perform. An accident resulting proximately from the conditions under which the business is carried on and under which the employee necessarily does his work is one 'arising out of * * * his employment' within the intent and meaning of those words as used in the Compensation Act defining a compensable injury."

The court in the Gates Company case, supra, pointed out specifically that the McKnight case, supra, was not intended to be controlling where an injury is suffered by one who is not an active participant in the "horseplay."

Under the decisions above cited, the controlling element is whether claimant was a participant in the playful conduct which caused the injury. If he was participating in the play he cannot recover workmen's compensation benefits for injuries sustained as a result thereof. If he was not a participant he will not be denied such benefits on the sole ground that playful conduct of a fellow workman caused the injury. There was no conflict in the evidence, and it amply supported the findings of the referee and the award of the Commission based thereon.

The judgment is reversed and the cause remanded with directions to affirm the award of the Industrial Commission.