**Ardith POPOVICH, Petitioner,**

v.

**John IRLANDO, Respondent.**

No. 90SC259.

Supreme Court of Colorado,
En Banc.

May 20, 1991.

Gilbert M. Roman, Feiger, Collison & Killmer, P.C., Denver, for amicus curiae, Colorado Chapter of the National Employment Lawyers Ass'n.

Solomon & Lindquist–Kleissler, P.C., Carmen S. Danielson, Denver, for amicus curiae, the Colorado Women's Bar Ass'n.

Justice QUINN delivered the Opinion of the Court.

The question in this case is whether the co-employee immunity rule of workers' compensation law bars a tort claim filed in the county court by an employee seeking damages from a co-employee for the intentional infliction of emotional distress due to sexual harassment. The county court ruled that the exclusive-remedy provisions of the Colorado Workers' Compensation Act barred the plaintiff's claim and dismissed the complaint with prejudice.[1] The district court affirmed the judgment of dismissal, and we granted the plaintiff's petition for certiorari. We conclude that the county court erred in not conducting an evidentiary hearing to determine whether the co-employee immunity rule barred the plaintiff's claim under the factual circumstances alleged in the plaintiff's complaint. We accordingly reverse the judgment of the district court and remand the case to that court with directions to return the case to the county court for further proceedings.

## I.

On February 16, 1988, the plaintiff, Ardith Popovich, a cable repair technician for U.S. West/Mountain States Telephone & Telegraph Company (Mountain Bell), filed a claim seeking workers' compensation benefits for severe depression and anxiety caused by sexually degrading remarks made by three co-workers, including John Irlando, who also is a cable repair technician for Mountain Bell and at one time worked on the same repair crew as Popo-

Law Offices of John Robert Holland, P.C., John R. Holland, Law Office of Kathleen Mullen, P.C., Kathleen Mullen, Benjamin Sachs, Denver, for petitioner.

Hall & Evans, Barbara A. Duff, Alan Epstein, Denver, for respondent.

**1.** The Colorado Workers' Compensation Act was repealed and reenacted, with substantial amendments, and became effective on July 1, 1990. Ch. 32, sec. 1–79, 1990 Colo.Sess.Laws 468–576.

Because the operative events in this case occurred prior to July 1, 1990, our citations in this opinion are to the pre–1990 version of the Workers' Compensation Act.

vich. In her workers' compensation claim, Popovich alleged that on July 9, 1987, when she was performing her job duties, she was informed by another employee of the remarks made by Irlando and two other co-workers, and that she was unable to return to work for several days and sought and received treatment for her depression. Popovich did not claim any permanent disability as a result of her illness. Although Mountain Bell disputed whether Popovich's claim was a legitimate workers' compensation claim, it agreed to settle with Popovich by paying $3,138.00 directly to her health care providers to cover her medical and counseling expenses. Pursuant to the settlement agreement, which was executed on May 18, 1989, Popovich expressly agreed to waive any right or entitlement to workers' compensation benefits for her claimed injury, including any right to reopen her claim. The settlement agreement was approved by the Division of Labor.

On June 7, 1989, Popovich filed a common law tort action in the County Court of Jefferson County against John Irlando for intentional infliction of emotional distress and sought reasonable damages not in excess of $5,000. In her complaint, Popovich alleged as follows:

> That on or about the months of January through the months of June of 1987 the defendant engaged in extreme and outrageous conduct toward the plaintiff by falsely accusing her of engaging in acts of oral sex and sexual intercourse with several of her male co-workers.

> That the defendant engaged in the conduct recklessly or with the intent of causing the plaintiff severe emotional distress.

> That the plaintiff incurred severe emotional distress which was caused by the defendant's extreme and outrageous conduct.

That these allegations by the defendant were false.

Irlando denied the allegations of the complaint and moved to dismiss the complaint with prejudice on the basis that the Workers' Compensation Act provided Popovich with the exclusive remedy for her claimed injury or damage and thus barred her common law tort action against him for intentional infliction of emotional distress. The county court heard legal arguments on the motion and, without determining whether there was any dispute as to the material facts underlying Popovich's tort claim, dismissed the complaint with prejudice. Popovich appealed to the district court, which affirmed the judgment of dismissal on April 6, 1990.[2] We thereafter granted Popovich's petition for certiorari in order to consider the effect of the Workers' Compensation Act on Popovich's tort claim against a co-employee for intentional infliction of emotional distress based on sexual harassment.

## II.

The Workers' Compensation Act provides a comprehensive administrative structure for compensating workers for job-related injuries and occupational diseases. An employer's compliance with these statutory provisions is construed as a surrender by both the employer and the employee of any other cause of action or common-law right or remedy which the employee may have against the employer for the employee's injuries arising out of and in the course of employment. § 8-43-104, 3B C.R.S. (1986); *see Curtiss v. GSX Corp. of Colorado*, 774 P.2d 873, 874 (Colo.1989). Section 8-52-102(1), 3B C.R.S. (1986), states that the right of compensation authorized by the act, in lieu of any other liability to any person for any personal injury or death, shall obtain in all cases where the following conditions occur:

---

**2.** The specific nature of the acts underlying Popovich's claim were detailed in a brief filed in the district court. The brief described how Irlando would ask a co-worker in the presence of other workers whether the co-worker had engaged in sexual relations with Popovich on that day. In addition, it was stated in the brief that when Popovich left the work office on one occasion, the defendant told others that she was going to meet her fiance to engage in fellatio. Popovich's brief also described other instances of similarly offensive conduct directed against her by Irlando and others during her working hours.

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted.[3]

### A.

Although the Workers' Compensation Act is silent on whether an employer is immune from a common law action for intentional wrongs committed by a co-employee and arising out of and in the course of employment, we held in *Kandt v. Evans*, 645 P.2d 1300, 1304 (Colo.1982), that, in light of the exclusive-remedy provisions of the act, there is no justification for holding an employer answerable in tort for an employee's intentional acts solely under the principle of *respondeat superior*. We also addressed in *Kandt* whether the exclusivity provisions constitute a bar to a common law tort action against a co-employee for the intentional infliction of emotional distress.[4] After noting that section 8–52–108, 3B C.R.S. (1986), allows an employee to pursue a common law remedy for work-related injuries in cases where the employee "is injured or killed by the negligence or wrong of another not in the same employ," we reasoned that a rule of co-employee immunity was consistent with "the aim of workmen's compensation schemes to spread the costs of hazards of the workplace, one of which is intentional interference with an employee's legal interests by a fellow employee." 645 P.2d at 1304–05. Based on this reasoning, we concluded that "co-employee immunity for intentional wrongs is strictly limited to injuries sustained where both the tortfeasor and the victim are acting in the course of their employment." 645 P.2d at 1305. This strict limitation on co-employee immunity, we emphasized in *Kandt*, would result in preserving "the deterrent function of tort liability ... as to those acts between employees not 'arising out of and in the course of' the employment relation." *Id.* However, because it was undisputed in *Kandt* that the co-employee tortfeasor was acting within the scope of his employment when he caused the plaintiff's emotional distress, we held that the plaintiff's claim was barred.

■ It follows from the rationale of *Kandt* that the rule of co-employee immunity does not extend to a co-employee's intentional tort when the tortious conduct did not arise out of and in the course of the tortfeasor's employment, even though the injury to the victim might have occurred within the scope of the victim's employment. It is against the backdrop of *Kandt*'s analysis of the co-employee immunity rule, therefore, that we must examine the legal scope and significance of the "in the course of" and "arising out of" elements of Colorado's workers' compensation scheme in order to assess the cognizability of Popovich's tort claim against Irlando.

---

**3.** The statutory scheme creates a right to workers' compensation benefits for mental or emotional distress only in cases where all of the following conditions occur: the claim is proven by evidence supported by the testimony of a licensed physician or psychologist; the emotional or mental strain has arisen primarily from the claimant's occupation and place of employment; the claim is not based, in whole or in part, upon facts or circumstances that are common to all fields of employment; and the emotional or mental stress is, in and of itself, either sufficient to render the employee temporarily or permanently disabled from pursuing the occupation from which the claim arose or to require medical or psychological treatment. § 8–52–102(2), 3B C.R.S. (1986).

**4.** We expressly acknowledged in *Kandt* that, although prior to 1975 the workers' compensation scheme was cast in terms of "accident," our decisional law "declared that an employee's injuries from an assault by a co-employee are compensable under the Act, as long as they 'arise out of' the employment." 645 P.2d at 1303 (citing *Wisdom v. Industrial Comm'n*, 133 Colo. 266, 293 P.2d 967 (1956)). The statutory scheme applicable to this case contains the term "injury" rather than "accident." § 8–52–102(1), 3B C.R.S. (1986).

## B.

In workers' compensation law, the terms "in the course of" and "arising out of" are not synonymous. "In the course of employment" generally refers to "the time, place and circumstances under which the injury occurred." *Industrial Comm'n v. London & Lancashire Indemnity Co.*, 135 Colo. 372, 376, 311 P.2d 705, 707 (1957). The "course of employment" requirement is satisfied when it is shown that the injury occurred within the time and place limits of the employment relation and during an activity that had some connection with the employee's job-related functions. *City and County of Denver School District No. 1 v. Industrial Comm'n*, 196 Colo. 131, 133, 581 P.2d 1162, 1163 (1978); *O.P. Skaggs Co. v. Nixon*, 101 Colo. 203, 206–07, 72 P.2d 1102, 1103–04 (1937); 1A A. Larson, *The Law of Workmen's Compensation* § 20.00 (1990).

The term "arising out of" is narrower than the term "in the course of." *E.g., Deterts v. Times Publishing Co.*, 38 Colo. App. 48, 51, 552 P.2d 1033, 1036 (1976). An injury or occupational disease "arises out of" employment when it has its origin in an employee's work-related functions and is sufficiently related thereto as to be considered part of the employee's service to the employer in connection with the contract of employment. *See, e.g., Martin Marietta Corp. v. Faulk*, 158 Colo. 441, 445, 407 P.2d 348, 350 (1965); *State Compensation Insurance Fund v. Walter*, 143 Colo. 549, 552, 354 P.2d 591, 592 (1960); *Industrial Comm'n v. Employers' Casualty Co.*, 136 Colo. 396, 398–401, 318 P.2d 216, 217–19 (1957). We analyzed the "arising out of" requirement in *In re Question Submitted by the United States Court of Appeals*, 759 P.2d 17 (Colo.1988) (hereinafter referred to as *Tolbert*), where we considered whether the Workers' Compensation Act barred Tolbert's tort claim in negligence against her employer for injuries resulting from a sexual assault by a co-employee. Our discussion of the "arising out of" component of the Workers' Compensation Act provides helpful guid-ance in analyzing the issue before us in this case.

We noted in *Tolbert* that intentional torts committed against an employee by a co-employee can be divided generally into three categories: those that have an inherent connection with the employment; those that are inherently private; and those that are neither inherently employment-related nor private and thus are designated as "neutral." 759 P.2d at 23. Inherently employment-related torts are those that "have an inherent connection with employment" and emanate from "the duties of the job," while inherently private torts are those that originate in the private affairs of the claimant and tortfeasor and are unrelated to their respective employment functions. *Id.* The third category, which consists of the so-called "neutral" torts, refers to acts that do not originate in either the employment functions or private affairs of the claimant but rather are attributable to neutral or unexplained sources which would have injured any person who happened to be in the position of the claimant at the time and place in question. *Id.* at 24. We concluded that because the injury to Tolbert, the sexual assault victim, occurred during the course of employment and because the sexual assault was " 'neutral' in the sense that it was not specific to [the victim]," Tolbert's injury arose out of her employment. *Id.* at 25.

Under *Tolbert*, therefore, the exclusive-remedy provisions of the Workers' Compensation Act will bar a plaintiff-employee's tort claim against an employer for negligently hiring and supervising a co-employee who assaults the plaintiff-employee whenever the co-employee's tortious conduct originates in a work-related function or constitutes a neutral force. We emphasized in *Tolbert* that although our "ruling may seem to produce an unfair result," in that the injured employee was resisting workers' compensation compensability in order to obtain a larger recovery in a civil action, we nonetheless felt bound to construe the Workers' Compensation Act in a manner which made its remedies available

to employees injured in the workplace. 759 P.2d at 26.

■ We deal in this case with an intentional tort claim against a co-employee tortfeasor and not, as in *Tolbert*, with a negligence claim filed against a complying employer for the purpose of holding the employer vicariously liable under the doctrine of *respondeat superior* for the intentional conduct of a co-employee. Where, as here, a claimant-employee sues a co-employee in tort for intentional injuries which occur in the scope of the claimant's employment and for which the claimant arguably may not have been compensated under the workers' compensation scheme, we hold that, consistent with our interpretation of the co-employee immunity rule in *Kandt*—namely, the rule of co-employee immunity must be strictly limited "to injuries sustained where both the tortfeasor and the victim are acting in the course of their employment" in order to preserve the deterrent function of tort liability "as to those acts between employees not 'arising out of and in the course of' the employment relation," 645 P.2d at 1305,—the claimant's tort claim will be barred by reason of the "arising out of" component of the co-employee immunity rule only if the tortious conduct originates in the work-related duties or responsibilities of the co-employee tortfeasor so as to be considered part of the co-employee's service to the employer in connection with the co-employee's contract of employment. If the tortious conduct originates in matters personal to the tortfeasor or derives from a neutral source unrelated to the tortfeasor's employment, then the tortious conduct does not arise out of employment and thus is not immunized from tort liability by reason of the co-employee immunity rule, even though the injury to the victim of the tort occurs within the scope of the victim's employment.

## C.

■ An employee suffering injury or damage as a result of an intentional tort committed by a co-employee, of course, is entitled to be recompensed only once for the same injury or damage. *See Marquez*

*v. Prudential Property & Casualty Insurance Co.*, 620 P.2d 29, 33 (Colo.1980); W. Prosser & W. Keeton, *The Law of Torts* § 48, at 330 (W. Keeton ed.1984). The Workers' Compensation Act is designed to compensate an injured worker for a work-related injury or disease, along with associated medical and other costs, and the concomitant loss of earning capacity resulting in permanent or temporary industrial disability to the injured worker. *E.g., Allee v. Contractors, Inc.*, 783 P.2d 273, 276–77 (Colo.1989); *Grover v. Industrial Comm'n*, 759 P.2d 705, 709–10 (Colo.1988); *Vail Associates, Inc. v. West*, 692 P.2d 1111, 1114 (Colo.1984); *Byouk v. Industrial Comm'n*, 106 Colo. 430, 434, 105 P.2d 1087, 1089 (1940). Various forms of emotional distress, however, can seriously affect a person's mental health but not necessarily result in temporary or permanent industrial disability or loss of earning capacity compensable under the workers' compensation scheme. Although the exclusivity provisions of the Workers' Compensation Act are based on the *quid pro quo* by which the employer gives up normal tort defenses and assumes liability without fault for a work-related injury or disease, and the employee gives up a right to sue the employer in tort for damages, the *quid pro quo* breaks down in the case of an employee's intentionally tortious conduct unrelated to the employee's job duties or responsibilities.

The breakdown of the *quid pro quo* is perhaps no more obvious than in the case of intentionally tortious conduct causing serious nonphysical damage that does not result in any discernible level of industrial disability compensable under the workers' compensation scheme. Such injury or damage can hardly be characterized as a risk inherent in the employment relationship. *Kirk v. Smith*, 674 F.Supp. 803 (D.Colo. 1987) (plaintiff's tort claim for assault and outrageous conduct against supervisor resulting primarily in mental and emotional distress, as distinguished from physical incapacity to perform job duties, not barred by Workers' Compensation Act); *see also* Comment, *A Theory of Tort Liability for Sexual Harassment in the Workplace*, 134

U.Pa.L.Rev. 1461, 1491–94 (1986). The mere fact that a workers' compensation award or settlement has resulted in the payment of the injured employee's medical and counseling bills, therefore, is hardly a warrant, in and of itself, for denying the claimant-employee the right to file a tort claim against the co-employee for intentionally causing intangible injury and damage to the claimant's self-esteem, privacy, and reputation, for which the claimant has not been previously compensated by virtue of any workers' compensation award or settlement.

### III.

■ Resolving the issue of co-employee immunity under the Workers' Compensation Act is a fact specific inquiry into the circumstances underlying the plaintiff's tort claim. The co-employee immunity rule constitutes an affirmative defense to a tort claim against a co-employee, and the burden accordingly falls on the defendant to establish the factual and legal predicates for the defense. *E.g., Woodsmall v. RTD*, 800 P.2d 63, 69 (Colo.1990). The trial court, in resolving a motion to dismiss a complaint, must accept the allegations of the plaintiff's complaint as true and construe them strictly against the defendant. *E.g., Abts v. Board of Education of School District RE–1*, 622 P.2d 518, 521 (Colo. 1980); *Davidson v. Dill*, 180 Colo. 123, 131–32, 503 P.2d 157, 162 (1972). Because of the factual nature of the inquiry, it generally will be necessary for the trial court to consider matters outside the pleadings in resolving a motion to dismiss on the basis of the co-employee immunity rule. Under such circumstances, a C.R.C.P. 12(b)(5) motion to dismiss should be treated and resolved as a motion for summary judgment under C.R.C.P. 56. Unless the trial court, after considering all factual matters established by affidavit or otherwise, is satisfied as a matter of law that there is such a clear and undisputed nexus between the tortfeasor's employment-related duties or responsibilities and the plaintiff's injuries as to satisfy the "in the course of" and "arising out of" components of the co-employee immunity rule, the court should deny the motion to dismiss. *See Stamper v. Hiteshew*, 797 P.2d 784 (Colo. App.1990) (when plaintiff filed tort claim against employer for assault and battery and other acts of sexual harassment by employer directed against plaintiff at the workplace, trial court erred in granting summary judgment for employer, since "there exists a genuine factual controversy regarding the requisite degree of job relatedness for workmen's compensation coverage"); *Patel v. Thomas*, 793 P.2d 632, 636–37 (Colo.App.1990) (allegations of plaintiff's complaint against supervisor for various forms of on-the-job sexual harassment raised sufficient factual issues to preclude dismissal of complaint under exclusivity provisions of Workers' Compensation Act).

### IV.

■ Popovich's complaint was for the tort of intentional infliction of emotional distress caused by sexual harassment perpetrated by Irlando, a co-employee, over a period of six or seven months and sought damages for severe mental and emotional anxiety suffered by Popovich. The complaint did not allege that Irlando's tortious conduct occurred within the course and scope of his employment-related duties with Mountain Bell. Nor did the county court, in dismissing the complaint, make any factual findings on that aspect of the case. In dismissing the case without adequate evidentiary findings, the county court erred. It is therefore necessary to return the case to the county court for an appropriate evidentiary hearing.

On remand, the county court must treat the motion to dismiss as a motion for summary judgment under C.R.C.P. 56 and determine, under the standards previously discussed, whether the alleged sexual harassment underlying Popovich's claim occurred in the course of Irlando's employment and arose out of that employment. If, on remand, the county court is not convinced that there is such a clear and undisputed nexus between Irlando's employment-related duties as to satisfy the "in the course of" and "arising out of" elements of

the co-employee immunity rule, the court should deny the motion to dismiss. If, on the other hand, the county court is so satisfied, then it should grant summary judgment on behalf of Irlando.

In hearing the motion to dismiss, the court, in its discretion, may also consider and determine the extent, if any, to which Popovich may have already been compensated for certain elements of her tort claim by reason of the workers' compensation settlement, or the court may reserve that issue for trial. To the extent that Popovich's tort claim against Irlando includes the medical and counseling expenses previously paid by Mountain Bell pursuant to the workers' compensation settlement, any recovery by Popovich on those elements should be credited to Mountain Bell if there exists a valid subrogation interest on its part. If there is no such subrogation interest on the part of Mountain Bell, then Popovich cannot be again compensated for her medical and counseling expenses previously paid by Mountain Bell on her behalf.[5] On the other hand, those elements of Popovich's damages that have not been satisfied by the workers' compensation settlement may properly be included in her claim against Irlando and as part of any judgment that might be entered in her favor against Irlando.

The judgment of the district court is accordingly reversed and the case is remanded to that court with directions to return the case to the county court for further proceedings consistent with the views herein expressed.

---

**5.** There is no indication in the present record that Mountain Bell subrogated to Popovich's right to sue Irlando for the medical and counseling expenses paid by Mountain Bell. Nor does the record show whether Popovich, in settling her workers' compensation claim with Moun-

tain Bell, assigned her claim for medical and counseling expenses to Mountain Bell. The record, however, is far from fully developed, and we leave the question of Mountain Bell's interest in any judgment for the trial court's resolution on remand.