**Ramona MALONE, Plaintiff,**

v.

**SIGNAL PROCESSING TECHNOL-OGIES, INC., et al., Defendants.**

Civ. A. No. 92–B–728.

United States District Court,
D. Colorado.

June 30, 1993.

Dwight L. Pringle, Patrick B. Mooney, Semple & Jackson, P.C., Denver, CO, for plaintiff.

Raymond M. Deeny, Glenn H. Schlabs, N. Dawn Webber, Sherman & Howard, Colorado Springs, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

### I.

Defendants move for leave to amend their answer and for summary judgment. The motions have been briefed fully and oral argument is unnecessary. Defendants are given leave to amend their answer. Defendants' motion for summary judgment is denied as to all of plaintiff Ramona Malone's (Malone) claims except for her eighth claim for relief based on the public policy exception to the employment at will doctrine. Summary judgment will be granted as to this claim only.

Malone, a black female, worked as an assembler for defendant Signal Processing Technologies, Inc. (Signal) from November 1974 until her employment was terminated in January 1992. Defendant Michael Lumpkin (Lumpkin) was Malone's supervisor for a portion of this time. In late 1991 Malone complained to Signal's human resources director, Verlyn Ammon (Ammon), and executive vice-president Cavit Ozdalga (Ozdalga), about not being paid for overtime. At this time she also complained about three sexually explicit photocopies left on her desk. Malone threw away the first two photocopies and retained the third, a photocopy of buttocks. Written on this photocopy were the phrases "Mike loves you all" and "the other half". Malone suspected that Lumpkin was discriminating against her in denying her overtime and was responsible for leaving the

photocopies on her desk. After an investigation, Ozdalga reassigned Malone to a new supervisor and reprimanded Lumpkin. In January 1992 Signal terminated Malone's employment.

Malone claims Signal fired her in retaliation for complaining about overtime compensation and the sexual harassment which she contends occurred as a result of the photocopies placed on her desk. Malone asserts Fair Labor Standards Act (FLSA) and Title VII retaliation claims against Signal. *See* 29 U.S.C. § 215(a)(3); 42 U.S.C. § 2000e–3(a). She further asserts Title VII disparate treatment and discriminatory discharge claims and a claim under 42 U.S.C. § 1981 (section 1981) against Signal. She also asserts a state law claim for outrageous conduct against Lumpkin and state law public policy wrongful discharge and discrimination claims against Signal. I have original jurisdiction over Malone's federal claims, 29 U.S.C. § 216(b), 42 U.S.C. § 2000e–5(f)(3), and 28 U.S.C. § 1343(a)(3), and supplemental jurisdiction over Malone's state law claims, 28 U.S.C. § 1367(a).

## II.

■ Defendants request leave to amend their answer to plead a statute of limitation defense to Malone's outrageous conduct claim. Malone amended her complaint on September 15, 1992 to add an outrageous conduct claim. During her April 7 and 24, 1993 depositions Malone stated that Lumpkin caused photocopies of male genitalia and buttocks to be placed on her desk. Malone identifies this conduct as the basis for her outrageous conduct claim. Malone testified that the last of these photocopies was placed on her desk sometime in June or July 1990. (Malone depo. p. 157 ll. 2–13.)

A two year statute of limitation period applies to an outrageous conduct claim. § 13–80–102(1)(a), C.R.S. (1987 Repl.Vol. 6A). Defendants claim this defense could not have been raised earlier because they were unaware and could not learn through the exercise of reasonable diligence when the photocopies were placed on Malone's desk.

Defendants have exercised diligence in ascertaining when the acts giving rise to Ma-

lone's outrageous conduct claim occurred. Because defendants have not been dilatory in pleading their statute of limitation defense and because amendment shall be granted freely when justice so requires, Fed.R.Civ.P. 15(a), I grant them leave to amend their answer. Defendants' amended answer, tendered May 24, 1993, is accepted for filing.

## III.

■ Signal contends that summary judgment on Malone's federal retaliation and discrimination claims is appropriate because she was terminated for economic reasons. Malone counters that this excuse is a pretext for retaliation and discrimination.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) established an allocation of burdens of production for the presentation of proof in Title VII discriminatory-treatment cases. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, ——, 113 S.Ct. 2742, 2746, 125 L.Ed.2d 407 (1993). First, a plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination. *Id.,* —— U.S. at ——, 113 S.Ct. at 2747. A plaintiff's proof of a prima facie case of discrimination creates a presumption that the employer unlawfully discriminated against the employee. *Id.,* —— U.S. at ——, 113 S.Ct. at 2747. This presumption places upon the employer the burden of producing evidence that the adverse employment action was taken for a legitimate, nondiscriminatory reason. *Id.,* —— U.S. at ——, 113 S.Ct. at 2747. Although this presumption shifts the burden of production to the employer, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.,* —— U.S. at ——, 113 S.Ct. at 2747.

If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted ·... and drops from the case.... The plaintiff then has the full and fair opportunity to demonstrate, through the presentation of his own case and through cross-examination of the defendant's witnesses, that the proffered reason was not the true reason for the

employment decision ... and that race was. He retains the ultimate burden of persuading the trier of fact that he has been the victim of intentional discrimination.

*Id.,* —— U.S. at ——, 113 S.Ct. at 2747 (citations, quotation marks, and brackets omitted).

On the other hand, "[i]f the defendant has failed to sustain its burden but reasonable minds could differ as to whether a preponderance of the evidence establishes the facts of a prima facie case, then a question of fact does remain, which the trier of fact will be called upon to answer". *Id.,* —— U.S. at ——, 113 S.Ct. at 2748.

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reason, will permit the trier of fact to infer the ultimate fact of intentional discrimination....

*Id.,* —— U.S. at ——, 113 S.Ct. at 2749. However, mere rejection of the employer's proffered reasons is not enough alone to prove intentional discrimination. *Id.,* —— U.S. at ——, 113 S.Ct. at 2749; *EEOC v. Flasher Co.,* 986 F.2d 1312, 1321 (10th Cir. 1992). The trier of fact must find also that plaintiff has proven intentional discrimination by a preponderance of the evidence. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2752–53.

I use the *McDonnell Douglas* framework also to determine the sufficiency of Malone's section 1981 and Title VII retaliation claims. *Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377–78, 105 L.Ed.2d 132 (1989) (section 1981 claim); *Sabol v. Snyder,* 524 F.2d 1009, 1012 (10th Cir.1975) (same); *Love v. RE/MAX of America, Inc.,* 738 F.2d 383, 385 (10th Cir.1984) (Title VII retaliation claim).

A slightly different analysis attends an FLSA retaliation complaint. When the immediate cause or motivating factor of a discharge is the employee's assertion of a statutory right, the discharge is discriminatory under 29 U.S.C. § 215(a)(3) whether or not other grounds for discharge exist. *Love,* 738 F.2d at 387; *Martin v. Gingerbread House, Inc.,* 977 F.2d 1405, 1408 (10th Cir.1992). If retaliation is not the motivating factor, then the discrimination is not unlawful. *Martin,* 977 F.2d at 1408.

The differences between the *McDonnell Douglas* analysis and the FLSA motivating factor test need not concern me in this case. The same evidence that creates genuine issues for trial concerning pretext for discrimination also creates a genuine dispute whether Malone was discharged in retaliation for complaining about her overtime pay.

Signal contends that, even if Malone can establish a prima facie case of discrimination, the presumption of discrimination and retaliation evaporates because Signal had a legitimate, economic reason for Malone's termination. In 1991 Signal experienced disappointing sales. (Ozdalga affidavit ¶ 2.) Also, in December 1991 sales projections appeared bleak and back orders were low for the next several months. (Ozdalga affidavit ¶ 3.) Signal maintains that Malone was laid off to reduce overhead expenses. (Ozdalga affidavit ¶¶ 3 and 5.)

Malone, however, points to evidence that Signal considered subjective desirability of its employees when ostensibly making economically driven termination decisions. During a December 1991 meeting with Malone and another black female employee, Pauline Adams, who also was complaining about nonpayment for overtime, Ozdalga implied that when Bob Reese (a former Signal employee) was laid off, supposedly for strictly economic reasons, his misbehavior was considered in determining whether to discharge him. (Malone's exhibit C, at 140–3.) Then, within eleven months after Malone's termination, Signal hired nineteen new employees. (Malone's exhibit H.) Furthermore, Signal's contention that its disappointing 1991 sales, low backlog orders, and bleak sales projections were insufficient to sustain their workforce is refuted by its managers' concerns that they had so much work they could not afford to lose an employee in Malone's position. (Ali Taherkhah depo. p. 28 ln. 4—p. 32 ln. 14.) Seven months following Malone's

discharge the Colorado Springs *Gazette Telegraph* reported that Signal was purchasing a new research building. (Malone's exhibit R.) In this article Signal's president and CEO, Eduardo Fernandez, stated that Signal's parent company bought the building for expansion because Signal was meeting with new product success. (Malone's exhibit R.) He also stated that within the next five years he expected Signal to hire an additional 191 employees. (Malone's exhibit R.) Finally, before discharging Malone, Signal performed no cost benefit analysis to determine whether it would reduce its overhead expenses by laying off Malone. (Ozdalga depo. p. 155 ll. 4–23; Douglas Wilson depo. p. 52 ll. 17–22; Lumpkin depo. p. 115 ln. 23—p. 116 ln. 1; Taherkhah depo. p. 34 ln. 8—p. 35 ln. 11.)

This evidence clearly raises a genuine question whether Signal's decision to lay off Malone was truly driven by economic concerns. A reasonable jury could find from it that reduction of overhead costs was not the reason for Malone's termination. Consequently, the trier of fact must determine whether Signal has produced sufficient evidence to rebut the presumption of retaliation and discrimination established by Malone's prima facia case. Finally, even if Signal has satisfied its burden of production, Malone must be given a full and fair opportunity to persuade the factfinder that she was the victim of intentional discrimination. *Hicks*, — U.S. at —, 113 S.Ct. at 2752–53.

With regard to Malone's FLSA retaliation claim, this same evidence negates Signal's contention that economic conditions were the motivating force behind her termination. Thus, the question remains whether retaliation was the immediate and motivating factor for her termination.

Summary judgment shall enter where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The operative inquiry is whether, based on all the documents submitted, and accepting plaintiff's evidence as true and drawing all reasonable inference in her favor, a reasonable trier of fact could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir.1992). Because a reasonable trier of fact could find that Signal's economic justification for Malone was untrue, summary judgment on her federal discrimination and retaliation claims is inappropriate.

## IV.

■ Signal further contends that Malone is entitled to no relief on her federal discriminatory discharge and retaliation claims because, even assuming discrimination and retaliation, after acquired evidence of her misconduct supports her termination. To prevail on this theory an employer must demonstrate that it would have dismissed the employee had it known of the employee's misconduct at the time of the discharge. *Summers v. State Farm Mutual Auto Ins. Co.*, 864 F.2d 700, 708 (10th Cir.1988); *Milligan–Jensen v. Michigan Technological Univ.*, 975 F.2d 302, 304 (6th Cir.1992), *cert. granted,* — U.S. —, 113 S.Ct. 2991, 125 L.Ed.2d 686 (1993). However, the employer bears the burden of demonstrating that had it known about the misconduct it would have terminated the employee. *Bonger v. American Water Works*, 789 F.Supp. 1102, 1106 (D.Colo.1992); *Punahele v. United Air Lines, Inc.*, 756 F.Supp. 487, 491 (D.Colo. 1991).

Signal presents a host of evidence that Malone: (1) circulated photocopies containing sexual innuendo, (Ben Runco affidavit ¶ 3; Carl Carley affidavit ¶ 3; Wayne Chambers affidavit ¶ 2); (2) regularly made sexually explicit jokes and comments, (Runco affidavit ¶ 2; Carley affidavit ¶ 1; Chambers affidavit ¶ 2; Charles Montoya affidavit ¶ 2; Larry Wymore affidavit ¶ 3); (3) jerked the pants off a male co-worker in the lobby of Signal's offices, (Sharon McDaniel affidavit ¶ 2); (4) grabbed male co-workers' crotches (Carley affidavit ¶ 2); (5) created sexually explicit pictures on her computer through the use of a special software program (Carley affidavit ¶ 3; Chambers ¶ 3; Montoya affidavit ¶ 3; Wymore affidavit ¶ 3); and (6) stole confidential personnel documents from Signal's files, (Pauline Adams' depo. p. 162 ln. 21—p. 163

Michael Ruebenson affidavit ¶ 4). Signal maintains that this misconduct would have warranted Malone's dismissal for cause. (Alan Grebene affidavit ¶¶ 3 and 4; Ozdalga affidavit ¶ 7; Ruebenson affidavit ¶¶ 4 and 6.)

Malone denies that she engaged in any of the above alleged misconduct. (Malone affidavit ¶¶ 3 and 4.) Therefore, there is a genuine issue for trial whether this alleged misconduct occurred.

In addition, Signal's human resources manager stated recently that she is unaware of any reason why Signal could not rehire Malone into an available position. (Barbara Austin depo. p. 16 ll. 2–10.) Austin made this statement one day after sitting through Malone's deposition, during which her alleged misconduct was discussed. (Malone's exhibit I.) Based on Austin's testimony a reasonable jury could find that Malone's alleged misconduct would not have warranted dismissal.

Moreover, Lumpkin was not fired although Ozdalga learned that Lumpkin did nothing to prevent Bruce Hanawalt (Hanawalt), an outside contractor, from photocopying his, Hanawalt's, buttocks on a Signal copy machine. This photocopy was placed on Malone's desk. Lumpkin admits that he wrote something on the back of the photocopy. (Malone's exhibit C, at 144.) Because Lumpkin was not terminated for his involvement with this photocopy it is unclear whether Signal would have terminated Malone had it known about her alleged misconduct. A reasonable trier of fact could find here that Malone's alleged sexual horseplay would not have caused her dismissal.

## V.

### A.

One week in late 1991 Malone worked 37.5 hours and during that same week took an eight hour vacation day. Malone complained to Ammon and Ozdalga that she should have received overtime compensation because when her vacation time was combined with the number of hours actually worked she had earned credit for over forty hours during that week. After an investigation, Signal determined that Malone was not entitled to overtime compensation because vacation time cannot be used to create overtime. Malone contends Signal terminated her employment in retaliation for complaining about lack of overtime compensation. Signal maintains that because Malone complained about a lawful practice her FLSA retaliation claim necessarily fails. I disagree.

To establish a prima facie case of retaliatory discharge a claimant must prove that: (1) an employee engaged in protected opposition to discrimination or participated in a proceeding arising out of the discrimination; (2) the employer took adverse action against the employee after she engaged in the protected conduct; and (3) there is a causal connection between the employee's protected activity and the employer's action. *Allen v. Denver Public Schools*, 928 F.2d 978, 985 (10th Cir.1991). The FLSA's anti-retaliation provision protects conduct based on a good faith, although mistaken, belief that an employer's conduct is illegal. *Love*, 738 F.2d at 387.

Here there is evidence of Malone's good faith belief that Signal's refusal to pay her overtime violated the FLSA. When Malone raised this issue with Ozdalga she stated that she thought it was unfair that she was not being paid for overtime. (Malone depo. p. 90 ln. 4—p. 95 ln. 6.) Ozdalga confirmed that Malone complained about being denied overtime compensation. (Ozdalga depo. p. 42 ll. 4–16.) Also, when Malone expressed this concern to Lumpkin she indicated that Signal's denial of her overtime was a departure from prior policy. (Malone's exhibit C, at 138.) Malone's conduct is consistent with a belief that Signal's nonpayment of overtime was wrong.

Moreover, when Malone raised this concern with Ozdalga he asked Ammon to research this issue and assured Malone that, if the law so warranted, corrective action would be taken. (Malone's exhibit C, at 138.) The fact that Ozdalga did not dismiss her complaints outright and, in fact, said he would correct the situation if the law so warranted, bolsters Malone's contention that she had a good faith belief that Signal's denial of her

overtime payment was wrongful. Because there are disputed questions of fact surrounding Malone's good faith, summary judgment is inappropriate on her FLSA retaliation claim.

### B.

■ Signal further contends that Malone's Title VII retaliation claim is not maintainable. Signal contends Malone's alleged sexual horseplay made her impervious to the buttocks photocopy. Therefore, Signal argues, the buttocks photocopy could not have been an unwelcome sexual advance and cannot serve as a basis for a good faith complaint of sexual harassment. Signal concludes, therefore, that absent a good faith complaint about unwelcome sexual harassment Malone cannot prove the first element of a prima facie Title VII retaliation claim. As with an FLSA retaliation claim, an employee need only complain in good faith of a suspected Title VII violation. *Love,* 738 F.2d at 385.

Malone denies that she engaged in sexual horseplay. Malone's alleged sexual misconduct is central to Signal's contention that the photocopy was invited. Accordingly, because this is a disputed issue of fact, summary judgment on Malone's Title VII retaliation claim is inappropriate.

### VI.

■ Signal also argues that Malone's Title VII claim for disparate treatment is not properly before me because she failed to exhaust her administrative remedies with regard to this claim. Signal contends that because Malone's EEOC charge contains no mention of disparate treatment she failed to exhaust her administrative remedies regarding this claim. I disagree.

In her EEOC charge Malone states that she was discriminated against because of her gender, race, and in retaliation for complaining about sexual harassment. (Malone's exhibit P.) In support of her charge of discrimination she states, *inter alia,* "I was one of only two black females in my department, and only two blacks in the company." (Malone's exhibit P.)

■ A discrimination claimant must exhaust all administrative remedies before filing a discrimination claim in a federal court. 42 U.S.C. § 2000e–5(b) and (c); *Brown v. Hartshorne Public School Dist. No. 1,* 864 F.2d 680, 682 (10th Cir.1988).

> However, when an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC.

*Brown,* 864 F.2d at 682 (quoting *Oubichon v. North American Rockwell Corp.,* 482 F.2d 569, 571 (9th Cir.1973)). A claim stated in a judicial complaint is reasonably related to a claim made in the EEOC charge if it might arise during the investigation which can be expected to grow out of the underlying charge. *Mass v. Martin Marietta Corp.,* 805 F.Supp. 1530, 1541 (D.Colo.1992).

One would reasonably expect the EEOC to investigate disparate treatment as a result of Malone's charge that she suffered racial discrimination and that she is only one of two black Signal employees. Therefore, Malone's disparate treatment claim is reasonably related to her EEOC charge.

### VII.

■ Signal moves to limit Malone's remedies under the 1991 Civil Rights Act (the Act) to conduct occurring after the Act became law on November 21, 1991. Likewise, Signal urges me to limit Malone's section 1981 claim to conduct occurring after the Act became law. This action was filed after November 21, 1991. Thus, the Act applies regardless of when the conduct giving rise to it occurred. *Great American Tool & Mfg. Co. v. Adolph Coors, Co. Inc.,* 780 F.Supp. 1354, 1355 (D.Colo.1992). Accordingly, I will not limit application of the Act to only post-enactment conduct.

### VIII.

### A.

■ Lumpkin contends that Malone's outrageous conduct claim has not been plead

properly because Malone fails to plead each element of this claim. I disagree.

To state a claim for relief the complaint must contain a short and plain statement showing that the pleader is entitled to relief. Fed.R.Civ.P. 8(a)(2). The allegations must be sufficient to give a defendant fair notice of the plaintiff's claim and the basis upon which it rests. *Leatherman v. Tarrant Co.*, 507 U.S. ——, ——, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517, 524 (1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957)). A claimant need not plead each element of a claim. *Runyan v. United Brotherhood of Carpenters*, 566 F.Supp. 600, 608 (D.Colo.1983).

Malone alleges that: (1) "[o]n several occasions during her employment with SPT Plaintiff discovered photocopies of male buttocks and genitalia on her desk in her work area", (amended complaint ¶ 13); (2) these photocopies were of Lumpkin's anatomy, (amended complaint ¶ 47); (3) these photocopies had sexually and racially derogatory remarks written on them, (amended complaint ¶¶ 15 and 16); (4) these photocopies were placed on her desk by Lumpkin or by someone else with Lumpkin's knowledge, (amended complaint ¶ 14); (5) she was deeply offended by these photocopies, (amended complaint ¶ 17); (6) this conduct amounts to outrageous conduct, (amended complaint ¶ 47); and (7) she was damaged by this conduct, (amended complaint ¶ 48). These allegations are sufficient to state an outrageous conduct claim. *See Walker v. South Central Bell Tel. Co.*, 904 F.2d 275, 278 (5th Cir. 1990). In his reply brief, Lumpkin asserts for the first time that this conduct is not outrageous as a matter of law. Because this argument was not raised in his initial brief I decline to consider it.

### B.

Lumpkin also argues that the two year statute of limitation expired on Malone's outrageous conduct claim. Malone testified in her April 1993 depositions that the last of the offensive photocopies was placed on her desk sometime in June or July 1990. (Malone depo. p. 157 ll. 2–13.) However, in a December 1991 meeting with Ozdalga, Ma-lone stated that on three separate occasions obscene photocopies were placed on her desk in 1990. (Malone's exhibit C, at 140–1.) Several months elapsed between each occurrence, with the last occurring in December 1990. (Malone's exhibit C, at 140–1.) This timing is corroborated by Lumpkin who indicated that the buttocks photocopy was created during the fall or winter of 1990. (Malone's exhibit C, at 144.)

Malone's amended complaint, which for the first time alleges her outrageous conduct claim, was filed on September 15, 1992. Because the conduct giving rise to her outrageous conduct claim does not arise out of the conduct and occurrences giving rise to her FLSA claim stated in her original complaint, the filing date of the outrageous conduct claim does not relate back to the original complaint's filing date. Fed.R.Civ.P. 15(c). Therefore, September 15, 1992 is the date for gauging the statute of limitation for Malone's outrageous conduct claim.

There is a genuine issue whether at least one of the offensive photocopies was placed on Malone's desk within the two year statute of limitation period. Based on Malone's and Lumpkin's December 1991 statements to Ozdalga a reasonable trier of fact could find that the buttocks photocopy was placed on Malone's desk in December 1990, which is within the two year statute of limitation period. Therefore, summary judgment on this claim is inappropriate.

### C.

Lumpkin further argues that summary judgment is appropriate on Malone's outrageous conduct claim because there is no evidence of his involvement in the placement of any offensive photocopies on Malone's desk. Again, I disagree.

During a December 1991 meeting with Ozdalga Malone told Ozdalga that when she received the third offensive photocopy she confronted Lumpkin. (Malone's exhibit C, at 140–1.) Lumpkin allegedly laughed about the photocopy and admitted to having written something on it and placing it on Malone's desk. (Malone's exhibit C, at 140–1.) After denying involvement in this photocopy

incident, (Malone's exhibit C, at 143), Lumpkin recanted and admitted that he was present when Hanawalt made the photocopy. (Malone's exhibit C, at 144.) He further admitted that the handwriting on the back of the photocopy was his, but denied that he placed the photocopy on Malone's desk. (Malone's exhibit C, at 144.)

Lumpkin's inconsistent statements have him playing no, some, or a key role in the placement of the buttocks photocopy on Malone's desk. Lumpkin's own statements provide some evidence on which a reasonable factfinder could determine that Lumpkin participated in placing the third offensive photocopy on Malone's desk. Thus, a genuine dispute as to this issue exists and summary judgment on Malone's outrageous conduct claim is inappropriate.

### D.

■ Lumpkin finally seems to argue that Colorado's Worker's Compensation Act is the exclusive remedy for Malone's emotional distress. Co-employee immunity under Colorado's Worker's Compensation Act does not extend to a co-employee's intentional tort when the tortious conduct does not arise out of and in the course of the tortfeasor's employment, although the victim's injury was incurred within the scope of her employment. *Popovich v. Irlando,* 811 P.2d 379, 382 (Colo.1991). A claimant's injury arises out of her employment only if the co-employee's tortious conduct originates in his work-related duties or responsibilities so as to be considered part of his services to the employer in connection with his contract of employment. *Popovich,* 811 P.2d at 384.

> If the tortious conduct originates in matters personal to the tortfeasor or derives from a neutral source unrelated to the tortfeasor's employment, then the tortious conduct does not arise out of employment and thus is not immunized from tort liability by reason of the co-employee immunity rule, even though the injury to the victim of the tort occurs within the scope of the victim's employment.

*Popovich,* 811 P.2d at 384.

There is a genuine dispute whether Lumpkin's alleged placement of the offensive photocopies on Malone's desk is work-related. A reasonable trier of fact could find that Lumpkin's alleged conduct was not work-related so as to be considered part of his services to Signal. Accordingly, summary judgment on Malone's outrageous conduct claim against Lumpkin is inappropriate.

### IX.

■ Signal finally argues that summary judgment on Malone's public policy wrongful discharge claim is appropriate because she is pursuing adequate statutory remedies. I agree.

■ The public policy wrongful discharge exception is not available where, as here, the statute in question provides the employee with a wrongful discharge remedy and the employee is pursuing this remedy. *See Smith v. Colorado Interstate Gas Co.,* 777 F.Supp. 854, 858 (D.Colo.1991) (quoting *Gamble v. Levitz Furniture Co.,* 759 P.2d 761, 766 (Colo.App.1988)). *Martin Marietta v. Lorenz,* 823 P.2d 100 (Colo.1992) is not, as Malone argues, to the contrary. In *Lorenz* the Colorado Supreme Court recognized and set forth the standards governing an at-will employee's tort action for discharge in violation of public policy. In a footnote the Colorado Supreme Court recognized that in *Corbin v. Sinclair Marketing, Inc.,* 684 P.2d 265 (Colo.App.1984) the Colorado Court of Appeals dismissed an employee's public policy claim because, *inter alia,* the employee had a statutory remedy which he was pursuing. *See Lorenz,* 823 P.2d at 107 n. 5. *Lorenz* does not denigrate the rule that a public policy wrongful discharge claim is unavailable when the discharged employee has another statutory remedy which she is pursuing.

Malone premises her public policy claim on the retaliatory discharge she suffered because of her complaints about lack of overtime compensation and the sexual harassment she suffered. The FLSA and Title VII, however, provide her with adequate remedies to redress this alleged retaliation. *See* 29 U.S.C. § 215(a)(3); 42 U.S.C. § 2000e–3(a).

Accordingly, IT IS ORDERED that

(1) defendants' motion for leave to amend their answer is granted and defendants' amended answer, tendered May 24, 1993, is accepted for filing;

(2) defendants' motion for summary judgment is denied except as it pertains to Malone's eighth claim for relief for violation of public policy wrongful discharge. This claim is dismissed with prejudice; and

(3) the parties shall contact Magistrate Judge Richard M. Borchers within ten days of the date of this order to schedule a settlement conference to be held as soon as possible.