## No. 18,284.

### STATE COMPENSATION INSURANCE FUND, ET AL. *v.* INDUSTRIAL COMMISSION OF COLORADO, ET AL.

(314 P. [2d] 288)

Decided July 29, 1957. Rehearing denied September 3, 1957.

Mr. HAROLD CLARK THOMPSON, Mr. LOUIS SCHIFF, Mr. ALIOUS ROCKETT, for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Mr. R. FRANKLIN McKELVEY, Mr. LA VERNE H. McKELVEY, for defendant in error Billie Dwade Dennison.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the Court.

THIS case arises under the Workmen's Compensation Act. Billie Dwade Dennison, one of the defendants in error, was awarded death benefits by the Industrial Commission of the State of Colorado, and on appeal, the award was affirmed by the district court.

Workmen's compensation rights arise out of a contractual relationship between employer and employee.

The award here was for death benefits to the widow of Ray Herbert Dennison, who was fatally injured on September 24, 1955, at Trinidad, Colorado, as a football player in a game between Fort Lewis A & M College and Trinidad State Junior College. Deceased was a student at Fort Lewis A & M College and his tuition and expenses were paid from various sources. He was the beneficiary of an athletic scholarship known as a "Grant-in-Aid" to students; he was hired by the college to manage the student lounge; he also was hired to do work on the college farm; and received assistance from the G.I. Bill for ex-servicemen. As a regularly enrolled student, he was privileged to share in the student activities of the school, and was employed by the school as a part time employee and paid on an hourly basis of seventy cents per hour. The benefit of the athletic scholarship was a waiver by the college of all tuition. At the time of his enrollment as a student he had a part time job at a filling station and the director of student affairs and

football coach asked him, that if he could get a job that would make him as much as he was making at the filling station, at different hours, would he play football? Being agreeable to such an arrangement, deceased was then employed by the college to do certain work, which he did, and for which he was paid the regular student rate. He worked about twenty hours a week and was not paid for playing football. Accident insurance was carried on him as on other football players by the college, and deceased received one meal per day during the training period. The time for working at his various jobs on the campus was arranged so that he would take part in the football practice and activities, which was his desire, and which he was anxious to do. The college is a state-supported institution and both men and women students receive job assistance without any athletic requirement. Deceased had a family and needed this job assistance to help support them and at the same time have the benefit of schooling.

In the opening play of the scheduled football game he received a head injury for which he was hospitalized and died two days later.

There is no conflict in the evidence and it does not establish that at the time of the accident that deceased was under a contract of hire to play football, and the evidence does not disclose that playing football was an incident of, or caused by, his employment by the college for specific duties as hereinbefore set out.

█ Since the evidence does not disclose any contractual obligation to play football, then the employer-employee relationship does not exist and there is no contract which would support a claim for compensation under the Act. A review of the evidence disclosed that none of the benefits he received could, in any way, be claimed as consideration to play football, and there is nothing in the evidence that is indicative of the fact that the contract of hire by the college was dependent upon his playing football, that such employment would

have been changed had deceased not engaged in the football activities.

It is significant that the college did not receive a direct benefit from the activities, since the college was not in the football business and received no benefit from this field of recreation. In fact, the state-conducted institution, supported by taxpayers, could not as a matter of business enter into the maintenance of a football team for the purpose of making a profit directly or indirectly out of the taxpayers' money.

In a number of respects the evidence does not support the referee's finding. We are unable to agree with the referee that deceased was induced to leave his job at the filling station and return to the college as a student and football player. There is an implication of enticement, which the evidence will not support. On this specific point the following is the only evidence appertaining thereto: "Ray wanted to play football and he had a job in town at a filling station that would require more time. I asked him if he could get a job that would make him as much as he made at the filling station at different hours, would be play football and he said 'yes.'" This was the testimony of the director of student affairs and the coach. Further, the referee's finding implies that deceased had no intention of returning to school and would not have done so if he had not obtained the job at the college. The fact that he had enrolled as a full time student the January preceding belies any suggestion that he would not have returned to school unless he could play football. Reliance is had upon the case of *University of Denver v. Nemeth*, 127 Colo. 385, 257 P. (2d) 423. From a reading of the latter case, the distinction is at once apparent. In the latter case, claimant's employment as a student worker depended wholly on his playing football, and it is clear that if he failed to perform as a football player he would lose the job provided for him by the University. The opinion therein states, "The football coach testified that meals and the job

ceased when the student was 'cut from the football squad.' " Further, " * * * the employment at the University * * * was dependent on his playing football, and he could not retain his job without playing football."

■ Thus a contractual relationship was created between the claimant and the University. Liberal construction of the Workmen's Compensation Act cannot be expanded beyond the plain, clear and explicit language of the Act and the Act is to be enforced according to its intention, and the funds created for administration of the Act are not to be diverted to those who are not clearly entitled to receive them. The burden is always upon the claimant to establish to a reasonable certainty that the accident arose out of and in the course of his employment. We cannot believe that the legislature, in creating the compensation fund, intended that it be in the nature of a pension fund for all student athletes attending our state educational institutions.

We believe the following statement in *Industrial Commission v. Murphy,* 102 Colo. 59, 76 P. (2d) 741, is strikingly applicable: "No definition of 'arising out of and in the course of employment' to be found in this jurisdiction can be stretched to cover the instant case."

In accordance with the views herein expressed the judgment is reversed and the cause remanded to the district court with directions to enter an order dismissing the claim.

Mr. Chief Justice Moore and Mr. Justice Hall not participating.