Sandra J. YOUNGER, Petitioner,

v.

The CITY AND COUNTY OF DENVER, the Denver Police Department, the Industrial Claim Appeals Office of the State of Colorado, and the Director, Division of Labor, Respondents.

No. 90SC249.

Supreme Court of Colorado, En Banc.

May 6, 1991.

Gavend & Bryans, Richard B. Gavend, Denver, for petitioner.

Patricia L. Wells, City Atty., Geoffrey S. Wasson, Asst. City Atty., Denver, for respondents The City and County of Denver, and The Denver Police Dept.

, Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Michael P. Serruto, Asst. Atty. Gen., for respondents The Industrial Claim Appeals Office and Director, Div. of Labor.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to review the decision by the court of appeals in *Younger v. City and County of Denver*, 796 P.2d 38 (Colo.App.1990), affirming the denial of workers' compensation benefits to claimant, Sandra J. Younger (Younger), for an injury sustained during a pre-employment physical agility test. We affirm.

## I.

Younger was employed by the City and County of Denver as a communications clerk with the Denver Police Department, and had applied for an entry-level position as a police officer. Younger's job as a communications clerk and the job she sought as a police officer are governed by separate personnel systems within the City and County of Denver. One system, the Career Service Authority, covers Younger's position as a communications clerk, which is essentially a clerical position. The second personnel system, the Civil Service Commission, manages only employees in classified service, namely, police officers and firefighters.

To be considered for employment as a police officer, all applicants are required to pass a physical agility test, as well as a written test, a medical examination, a background check, and a polygraph examination. Successful completion of all of these tests does not, however, guarantee employment.

Younger passed the requisite written examination, and on September 8, 1986, which was Younger's regularly scheduled day off from work, she injured her knee while taking the physical agility test. The test required Younger to jump over a piece of duct tape on the floor from a squat position. While performing the exercise, Younger's foot caught on a piece of tape that was sticking up from the floor. She subsequently sustained an injury to her right knee, which required surgery and resulted in the loss of time and benefits from her employment.

Thereafter, Younger applied for workers' compensation benefits, which were denied. The administrative law judge (ALJ) found that Younger's job as a communications clerk within the Career Service Authority was "unrelated to and separate from the position she sought as a police officer," and rejected Younger's claim that her injury was compensable because it was incurred while she was pursuing a promotional opportunity. Thus, the ALJ concluded that Younger's injury during the pre-employment physical agility test did not arise out of and in the course of her employment as a communications clerk. The ALJ further concluded that, as an applicant for employment as a police officer, Younger was not an employee as defined under section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986), and was therefore not entitled to benefits.

The Industrial Claim Appeals Panel (Panel) affirmed the ALJ's order, and the court of appeals subsequently affirmed the final

order of the Panel. Younger now seeks review of the court of appeals opinion.

## II.

■ On appeal, Younger asserts two arguments: (1) that her status as an employee of the Denver Police Department entitled her to workers' compensation benefits during her tryout for another position within the Department; and (2) that, as a job applicant who was injured while performing a physical agility test required by a prospective employer, she is covered by the Workers' Compensation Act. We will address these issues in the order presented, keeping in mind that, as the claimant, Younger has the burden of establishing her right to benefits. *See Orr v. Industrial Comm'n*, 716 P.2d 1106, 1108 (Colo.1986).

## A.

We first consider whether Younger, as a communications clerk for the Denver Police Department, was entitled to workers' compensation benefits for an injury sustained while applying for an entry-level police officer position. Resolution of this issue will depend on whether Younger's injury "arose out of and in the course of" her employment with the Denver Police Department pursuant to section 8–52–102, 3B C.R.S. (1986).[1]

■ The phrases "arising out of" and "in the course of" in section 8–52–102 are not synonymous, and the conjunctive condition requires the claimant to meet both requirements. *In re Question Submitted by the United States Court of Appeals*, 759 P.2d 17, 20 (Colo.1988); *Industrial Comm'n v. London & Lancashire Indem.*

Co., 135 Colo. 372, 376, 311 P.2d 705, 707 (1957). The totality of the circumstances of each case must be considered in determining whether an injury arose out of and in the course of the employment. *See Berry's Coffee Shop v. Palomba*, 161 Colo. 369, 373, 423 P.2d 2, 4–5 (1967).

■ An injury "arises out of" employment when there is a causal connection between the employment and the injury. *In re Question*, 759 P.2d at 20. This court has adopted a positional-risk test, or "but for" standard, "to assess whether there is a sufficient relationship between the employment and the injury to justify compensation under the Act." *Id.* at 21. " 'An injury *arises out of* the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.' " *Id.* at 20 (emphasis in original) (quoting 1 Larson, *Workmen's Compensation Law* § 6.50, at 3–6 (1985) [hereinafter 1 Larson]). Applying the positional-risk test, we must determine "whether the employee, in the course of her employment, was reasonably required to be at a particular place at a particular time and there met with a 'neutral force.' " *Id.* at 22. A neutral force is one that is neither personal to the injured employee, nor distinctly associated with the employment. *Id.* (citing 1 Larson § 6.50, at 3–6).

■ We must therefore apply the positional-risk test to determine whether Younger's knee injury "arose out of" her employment as a communications clerk with the Denver Police Department. As a police communications clerk, Younger was responsible for computer operation and answering telephone calls on the police de-

1. Section 8–52–102 establishes the conditions of recovery and provides:

(1) The right to the compensation provided for in articles 40 to 54 of this title, in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted. The provisions of Colorado's Workers' Compensation Act were repealed and reenacted in 1990. *See* 1990 Colo.Sess. Laws 468.

partment's regular phone lines and its 911 emergency lines. The undisputed facts show that Younger applied for an entry-level police officer position of her own volition and took the physical agility test on her regularly scheduled day off from her job as a communications clerk. Younger's employer neither requested nor encouraged Younger to pursue employment as a police officer, and offered her no compensation to do so. Moreover, if the physical agility test had fallen on one of Younger's regular work days, she would have been required to use either compensatory leave time or vacation time to take the test. Despite Younger's assertion that she was pursuing a promotional opportunity within the Denver Police Department, the evidence supports the Panel's conclusion to the contrary. Younger's position was encompassed within the Career Service Authority. Although a position as police officer may have increased her career potential, Younger nevertheless was not pursuing a promotional opportunity; rather, she was seeking an entry-level position within a completely separate personnel system managed by the Civil Service Commission.

Applying the positional-risk test, we find that Younger's employer did not require her to participate in the physical agility test during which she sustained her injury. Younger therefore failed to show that her employment required her to be at the particular place where the injury occurred. Younger's failure to demonstrate that she met the first element of the positional-risk test makes it unnecessary to consider the remaining time and "neutral force" elements of the test. We therefore conclude that Younger's injury did not arise out of her employment as a police communications clerk. By failing to meet the "arising out of" component mandated by section 8–52–102, Younger is not eligible for recovery pursuant to that section.

**2.** The substantially similar definition of "employee" now appears in § 8–40–202, 3B C.R.S. (1990).

### B.

We next consider whether Younger, as a job applicant who was injured while performing a physical agility test required by a prospective employer, is covered by the Workers' Compensation Act (the Act). To be entitled to workers' compensation benefits, a person must qualify as an employee under the statutory definition. *Denver Truck Exch. v. Perryman*, 134 Colo. 586, 595, 307 P.2d 805, 811 (1957); *Loffland Bros. Co. v. Industrial Comm'n*, 714 P.2d 509, 510 (Colo.App.1985). We must therefore determine whether Younger qualified as an employee within the Civil Service Commission (Commission) when she was injured while performing the physical agility test. The applicable statutory definition for the present case appears in section 8–41–106(1)(a)(I)(A), 3B C.R.S. (1986), of the Act,[2] which defines an employee as:

> Every person *in the service of* the state, or of any county, city, town, or irrigation, drainage, or school district or any other taxing district therein, or of any public institution or administrative board thereof *under any appointment or contract of hire, express or implied;* .... Policemen and firemen who are regularly employed shall be deemed employees within the meaning of this paragraph (a)....

(Emphasis added.)

The burden is on Younger to prove that she was a Civil Service employee when she was injured while taking the physical agility test as an applicant for an entry-level police officer position. *See Hall v. State Compensation Ins. Fund*, 154 Colo. 47, 50, 387 P.2d 899, 901 (1963). Pursuant to the statutory requirements, it is incumbent upon Younger to show that she was serving the Commission under an appointment or a contract of hire. Under the facts presented, it is clear that, by performing the physical agility test, Younger was not serving the Commission pursuant to an "appointment,"[3] because a position as a

**3.** *Black's Law Dictionary* 99 (6th ed. 1990) defines "appointment" as: "The selection or designation of a person, by the person or persons having authority therefor, to fill an office or public function and discharge the duties of the

police officer is not one for which a person is appointed. We must therefore consider whether Younger was serving the Commission under a contract of hire, express or implied.

The specific issue of whether an injury sustained during a tryout is compensable as a job-related accident is one of first impression for this court. There is a difference of opinion among the jurisdictions that have addressed the issue. Younger relies on those cases that propound a more liberal interpretation of workers' compensation laws. The two leading cases espousing such a view are *Smith v. Venezian Lamp Co.*, 5 A.D.2d 12, 168 N.Y.S.2d 764 (N.Y.App.Div.1957), and *Laeng v. Workmen's Compensation Appeals Board*, 6 Cal.3d 771, 494 P.2d 1, 100 Cal.Rptr. 377 (1972).

In *Venezian Lamp*, the claimant was injured while trying out for a position as a lamp polisher. The claimant was given a lamp to be polished, which he placed on a spool. As the claimant attempted to polish the lamp with a buffing machine, the lamp slipped off the spool and struck the claimant, thereby causing his injuries. The court awarded the claimant benefits, holding that

> where a tryout involves an operation that would be ordinarily viewed as hazardous under the Workmen's Compensation Law a special employment exists.... A tryout is for the benefit of the employer, as well as the applicant, and if it involves a hazardous job we see no valid reason why the applicant should not be entitled to the protection of the statute.

*Venezian Lamp*, 5 A.D.2d at 14, 168 N.Y. S.2d at 766.

In *Laeng*, the claimant, as an applicant for a position as a refuse crew worker, participated in the timed "obstacle course" phase of a physical agility test conducted by the city, his prospective employer. The

obstacle course was designed to correlate with the actual conditions of employment. During the test, the claimant fell from a raised, horizontal telephone pole and severely fractured his right foot. The court vacated the denial of benefits by the Workmen's Compensation Appeals Board, stating that, even though the claimant was not an employee of the city in the "strict, contractual sense," the purpose of workers' compensation is "to protect individuals from any 'special risks' of employment; thus when an employer, as part of a 'tryout' for an employment position, exposes an applicant under his control and direction to such risks, any resulting injury becomes properly compensable under the workmen's compensation law." *Laeng*, 6 Cal.3d at 774, 494 P.2d at 2, 100 Cal.Rptr. at 378. In conclusion, the court held:

> [T]he injury incurred by [the] applicant in the performance of the arduous and potentially hazardous tasks prescribed by the employer occurred in the service of the employer.... Such service here was incurred for the benefit of the employer; it was performed according to his assignment and under his direction and control.

*Id.* at 783, 494 P.2d at 9, 100 Cal.Rptr. at 385. Finding that the California compensation laws mandated a liberal interpretation in favor of awarding compensation, the court determined that coverage was appropriate in this tryout situation. *Id.* The cases of *Venezian Lamp* and *Laeng* [4] focus on the service aspect of the employer-employee relationship under the workers' compensation laws, claiming that a tryout, which requires the performance of special skills, benefits the employer as well as the applicant and is therefore compensable.

A contrary, and in our view more reasonable, position is taken in *Boyd v. City of Montgomery*, 515 So.2d 6 (Ala.Civ.App. 1987); *Sellers v. City of Abbeville*, 458 So.2d 592 (La.App.1984); and *Dykes v. State Accident Insurance Fund*, 47 Or.

---

same." "Appointment" is similarly defined in *Webster's Third New International Dictionary* 105 (1971) as the "designation of a person to hold a nonelective office or perform a function."

4. For other cases following the *Venezian Lamp* and *Laeng* precedent, see *Childs v. Kalgin Island Lodge*, 779 P.2d 310 (Alaska 1989); *Moore v. Gundelfinger*, 56 Mich.App. 73, 223 N.W.2d 643 (1974); *Bode v. O. and W. Restaurant*, 9 A.D.2d 969, 193 N.Y.S.2d 845 (N.Y.App.Div.1959).

App. 187, 613 P.2d 1106 (1980). The facts in each of these cases are similar to those with which we are presently confronted: The claimant had applied for a position as a peace officer, was required to pass a physical agility test as a prerequisite to employment, and was injured during the testing phase. All three courts affirmed the denial of compensation. The courts in *Boyd* and *Sellers* found that the claimants' participation in the agility test did not create a contract of employment between the applicant and the city, the prospective employer. *Boyd*, 515 So.2d at 7; *Sellers*, 458 So.2d at 594. The court in *Boyd* held that "[a]lthough [the claimant] exposed herself to risk in trying out for employment with the City, she did so willingly and consciously. The benefit the City received from Boyd's taking an agility test does not rise to the level where a contract of employment can be imputed." *Boyd*, 515 So.2d at 7. The *Sellers* court similarly concluded that by performing the requisite physical agility test, the claimant "was not rendering services for the City of Abbeville. He was taking the test for his own benefit so that he would be eligible for employment.... There is no employer-employee relationship." *Sellers*, 458 So.2d at 594. Moreover, the court in *Dykes* made the astute observation that if it were to award compensation to an applicant injured during a pre-employment physical agility test, then "every person who makes application to an employer for a job, fills out an appli-

cation and takes any kind of test is *ipso facto* an employe." *Dykes*, 47 Or.App. at 190, 613 P.2d at 1107.

In our view, adherence to the contractual aspect of the employee-employer relationship, as advocated by the *Boyd* and *Sellers* courts, is more in line with previous Colorado case law. In *State Compensation Insurance Fund v. Industrial Commission*, 135 Colo. 570, 314 P.2d 288 (1957), this court specifically stated that workers' compensation benefits "arise out of a contractual relationship between employer and employee." *Id.* at 571, 314 P.2d at 289. In that case, this court denied death benefits to a widow whose husband incurred a fatal injury as a football player in a college game. Although the deceased received an athletic scholarship and had arranged the hours of his part-time employment with the college to accommodate football practice, the court found no contractual obligation between the school and the deceased; the deceased was not obligated to play football to keep his job with the college. This court thus concluded that without a contractual obligation, an employer-employee relationship did not exist which would support a claim for workers' compensation benefits. *Id.* at 572, 314 P.2d at 289.

Unlike the cases of *Venezian Lamp* and *Laeng* relied on by Younger, this court has held that, despite the liberal construction afforded to workers' compensation laws,[5] "[a] contract of hire is subject to the same

---

5. With the repeal and reenactment of the substantive provisions of the Workers' Compensation Act in 1990, the Colorado General Assembly rejected the liberal construction of the workers' compensation laws. A legislative declaration was added under § 8–40–102, 3B C.R.S. (1990), which states:

[I]t is the intent of the general assembly that the facts in a workers' compensation case are not to be interpreted liberally in favor of either the rights of injured workers or the rights of employers. Accordingly, the general assembly hereby declares that the disputes concerning the facts in workers' compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand.

Moreover, in its 1989 report to the Colorado General Assembly, the Committee on Workmen's Compensation and Unemployment Insur-

ance Programs stated with regard to § 8–40–102:

The legislative declaration repeals the rule of liberal construction and states instead that legislative intent is that workmen's compensation cases be decided on their own merits, not in favor of either the employee or employer. The primary intent of this provision is to overturn existing case law which has favored employees in close decisions.

Colorado Legislative Council, Report to the Gen. Assembly of 1989, Research Publication No. 334, at 43 (1989). Although we must apply the 1986 provisions of the workers' compensation laws, legislative declarations made subsequent to the enactment of those provisions, while not controlling, may be considered as indications of legislative intent. *See Andrus v. Shell Oil Co.*, 446 U.S. 657, 666 n. 8, 100 S.Ct. 1932, 1938 n. 8, 64 L.Ed.2d 593 (1980); *People v. Holland*, 708 P.2d 119, 120–21 (Colo.1985).

rules as other contracts." *Denver Truck Exch. v. Perryman,* 134 Colo. 586, 593, 307 P.2d 805, 810 (1957). Thus, in order to award benefits, we must determine whether a mutual agreement existed between the parties that created a mutual obligation. *See id.* at 592, 307 P.2d at 810; *Hall v. State Compensation Ins. Fund,* 154 Colo. 47, 50, 387 P.2d 899, 901 (1963).

■ The facts in the present case show that Younger voluntarily applied for an entry-level position as a police officer. She was neither encouraged to pursue this position nor was she paid for her participation in the application process. Moreover, had Younger successfully completed the physical agility test, she would still have been required to pass background checks, a polygraph test, and a medical examination merely to qualify for the pool of candidates from which the final selection of police officers would be made. In fact, the record shows that after the Civil Service Commission conducts the necessary tests, the Manager of Safety has discretion, within limits, to select which of the qualified applicants will be offered employment. Hence, successful completion of the application process does not guarantee employment as a police officer.

Given this set of facts, we find that there was no mutual agreement between the Commission and Younger sufficient to create an employer-employee relationship that would justify an award of workers' compensation benefits. At no time during the application process was Younger promised employment as a police officer, even if she passed all of the requisite tests.

We therefore find that the denial of workers' compensation benefits to Younger was appropriate, and accordingly affirm the judgment of the court of appeals.