Nestor HORODYSKYJ and Zoriana M. Mororzewych–Horodyskyj, Petitioners,

v.

Richard KARANIAN, individually, and as President and Owner of Argus Electric Service, Inc.; and Argus Electric Service, Inc., Respondents.

No. 99SC875.

Supreme Court of Colorado, En Banc.

Oct. 1, 2001.

Knapp & Sachs, P.C., Debra Knapp Benjamin Sachs, Feiger, Collison, & Bechtold, LLC, Lynn D. Feiger, Joan M. Bechtold, Brian T. Moore, Denver, CO, Attorneys for Petitioners.

John Kokish, P.C., John Kokish, Castle Rock, CO, Attorney for Respondents.

Killian & Guthro, P.C., J. Keith Killian, Beecher Threatt, Grand Junction, CO, Attorneys for Amicus Curiae Colorado Trial Lawyers Association.

Miller, Lane, Killmer & Greisen, LLP, Darold W. Killmer, John T. Carlson, Denver, CO, Attorneys for Amicus Curiae Plaintiffs' Employment Lawyers Association.

Vaughan & Demuro, P.C., David R. Demuro, General Counsel, Pinnacol Assurance, Michael J. Steiner, Denver, CO, Attorneys for Amicus Curiae Pinnacol Assurance.

Chief Justice MULLARKEY delivered the Opinion of the Court.

In this opinion we address the relationship between workers' compensation laws and on-the-job sexual harassment inflicted by one employee upon another. We hold that injuries resulting from workplace sexual harassment are not compensable under the Workers' Compensation Act and, therefore, an employee's tort claims based on sexual harassment are not barred by the exclusivity provisions of the Act. Our decision today resolves a split of authority that has developed in the court of appeals on this issue. We reverse the judgment of the court of appeals in the case now before us, *Horodyskyj v. Karanian*, 5 P.3d 332 (Colo.App.1999), and remand the case for proceedings consistent with this opinion.

## I.

Nestor Horodyskyj was employed as an apprentice electrician for Argus Electric Service, Inc. from May 1994 to May 1995. Richard Karanian was Horodyskyj's only co-employee and also the president and sole owner of Argus.

Horodyskyj alleges that in the course of his employment at Argus he was sexually harassed by Karanian, who made sexually suggestive remarks to, and unwelcome physical contact with, him. These incidents occurred during regular employment hours. Horodyskyj claims that as a result of these incidents, he left his employment position at Argus.

Horodyskyj filed numerous claims in the trial court, including common-law tort claims of assault and battery, intentional infliction of emotional distress, negligent infliction of mental distress, and invasion of privacy. He also filed a constructive discharge claim based on the Colorado Anti Discrimination Act. Horodyskyj's wife, Zoriana Mororzewych Horodyskyj, asserted claims for loss of consortium. The claims brought against the co-employee, Karanian, were also brought against the employer, Argus, under a respondeat superior theory.

As relevant here, the trial court determined that Horodyskyj's tort claims were barred by the exclusivity provisions of the Workers' Compensation Act, sections 8–41–101 to –505, 3 C.R.S. (2000). The court of appeals upheld the trial court's dismissal of the claims against the employer, Argus, but

reversed its dismissal of Horodyskyj's tort claims brought against Karanian individually.

We granted certiorari to determine whether claims based on sexual harassment and related torts are barred by the exclusivity provisions of the Workers' Compensation Act.[1] Applying the test developed in our case law,[2] we determine that, in the usual case, injuries resulting from workplace sexual harassment do not arise out of an employee's employment for purposes of the Workers' Compensation Act. Moreover, nothing in the express language of the Act addresses sexual harassment. Although the Act was designed to provide exclusive remedies for employees suffering work-related injuries, it was not intended to cover injuries resulting from the usual case of workplace sexual harassment; specific federal and state anti-discrimination laws cover those cases. We hold that Horodyskyj's injuries are not compensable under the Act and, therefore, his claims based on sexual harassment and related torts are not barred by the Act.

## II.

Colorado's workers' compensation system establishes the benefits available to workers injured in the course and scope of employment and the procedures for obtaining those benefits. *Duran v. Indus. Claim Appeals Office*, 883 P.2d 477, 479 (Colo.1994). The purpose of the Act is "to provide a remedy in areas where remedies do not exist at common law." *Chartier v. Winslow Crane Serv. Co.*, 142 Colo. 294, 317, 350 P.2d 1044, 1056 (1960).

The Workers' Compensation Act provides exclusive remedies for employees suffering work-related injuries and occupational diseases. *Triad Painting Co. v. Blair*, 812 P.2d 638, 641 (Colo.1991); *Bailey v. C.P.*

*Constr., Inc.*, 837 P.2d 277, 279 (Colo.App. 1992). The exclusive-remedy provisions of the Act bar civil actions in tort against an employer for injuries that are compensable under the Act. *See* §§ 8–41–102 and 8–41–104, 3 C.R.S. (2000). An employer that has complied with the Act is granted immunity from common-law actions for damages, and its employees are limited to the remedies specified in the act. *Hilzer v. MacDonald*, 169 Colo. 230, 237, 454 P.2d 928, 931 (1969); *see also Popovich v. Irlando*, 811 P.2d 379, 381 (Colo.1991). Thus, in exchange for the certainty and relative speed of the workers' compensation system, an employee surrenders the right to sue his or her employer in tort and the employer surrenders its defenses to such suit. *Popovich*, 811 P.2d at 384.

Under the Act, an employee is entitled to compensation in all cases where the following conditions occur:

(a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;

(b) Where, at the time of the injury, the employee is performing service arising out of and in the course of the employee's employment;

(c) Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of the employee's employment and is not intentionally self-inflicted.

§ 8–41–301(1), 3 C.R.S. (2000). Only the third requirement is at issue in this case. Therefore, we must determine whether Horodyskyj's injury "arose out of and in the course of" his employment for the purposes of workers' compensation exclusivity.

---

1. We granted certiorari on the following issues:

(1) Whether the court of appeals erred in holding that tort claims against an employer for sexual harassment are barred by the Workers' Compensation Act, sections 8–40–101 to 8–47–209, 3 C.R.S. (1999), when the employer's harassment was specifically targeted at the employee.

(2) Whether the Workers' Compensation Act bars claims by an employee for intentional torts committed personally by the employer, or by an alter ego of the employer.

2. The Court recognizes an inexactness of fit between the existing framework for determining whether an employee's injury arose out of the employment and sexual harassment cases. Although the existing categories may be imprecise analytical tools in this context, they are well established in our case law, and we continue to apply them.

## A.

■ The phrases "arising out of" and "in the course of" are not synonymous and a claimant must meet both requirements. *Younger v. City & County of Denver*, 810 P.2d 647, 649 (Colo.1991); *In re Question Submitted by U.S. Court of Appeals*, 759 P.2d 17, 20 (Colo.1988) (*Tolbert*). The latter requirement refers to the time, place, and circumstances under which a work-related injury occurs. *Popovich*, 811 P.2d at 383 (internal citations omitted). Thus, an injury occurs "in the course of" employment when it takes place within the time and place limits of the employment relationship and during an activity connected with the employee's job-related functions. *Tolbert*, 759 P.2d at 20 n. 3; *Deterts v. Times Publ'g Co.*, 38 Colo. App. 48, 51, 552 P.2d 1033, 1036 (1976). The parties do not dispute that Horodyskyj's injury occurred in the course of his employment at Argus.

■ The term "arises out of" refers to the origin or cause of an injury. *Deterts*, 38 Colo.App. at 51, 552 P.2d at 1036. There must be a causal connection between the injury and the work conditions for the injury to arise out of the employment. *Younger*, 810 P.2d at 649. An injury "arises out of" employment when it has its origin in an employee's work-related functions and is sufficiently related to those functions to be considered part of the employee's employment contract. *Popovich*, 811 P.2d at 383.

## B.

In two earlier cases involving tort claims based on co-employee sexual assault and sexual harassment, we developed a test for determining whether injuries arise out of employment for the purposes of the Workers' Compensation Act. *Popovich*, 811 P.2d 379; *Tolbert*, 759 P.2d 17. Conflicting interpretations of this test in several recent decisions by the court of appeals, however, have created a split of authority in this area of law. *Compare Horodyskyj*, 5 P.3d at 335–36, *and Moorhead Mach. & Boiler Co. v. Del Valle*, 934 P.2d 861, 865 (Colo.App.1996), *and Rendon v. United Airlines*, 881 P.2d 482, 484–85 (Colo.App.1994), *with Ferris v. Bakery, Confectionery & Tobacco Union, Local 26*, 867 P.2d 38, 42 (Colo.App.1993), *and Stamper v. Hiteshew*, 797 P.2d 784, 785–86 (Colo.App. 1990), *and Patel v. Thomas*, 793 P.2d 632, 636–37 (Colo.App.1990).

Under the test, willful assaults by co-employees are divided into three categories: (1) those assaults that have an inherent connection with the employment; (2) those assaults that are inherently private; and (3) those assaults that are neutral. *Popovich*, 811 P.2d at 383 (explaining the test as established in *Tolbert*, 759 P.2d at 23–24). Both the first and third categories of assaults arise out of the employment for the purposes of the Workers' Compensation Act and therefore prevent an employee from suing his or her employer in tort for injuries based on such assaults. Only the second category of injuries, inherently private assaults, does not arise out of employment and thus tort claims based on such assaults are not barred by workers' compensation exclusivity.

This test was first applied in *Tolbert*, a case in which the United States Court of Appeals for the Tenth Circuit certified to this court a question pertaining to a pending federal case. The certified question was whether the Colorado Workers' Compensation Act provided the exclusive remedy to an employee for injuries resulting from a sexual assault by a co-employee, thereby prohibiting the employee from suing the employer in tort. *Tolbert*, 759 P.2d at 18. In *Tolbert*, an employee was attacked and raped by a co-employee while she was on her way to lunch at the company cafeteria. *Id.* at 19. We examined the employee's tort claim under the three-part test to determine if the assault arose out of employment. Because the district court in that case determined that the material facts were not in dispute and because the employee agreed that there was no personal or private motivation for the co-employee's attack, we were compelled to conclude that the assault was neutral. *Id.* at 19, 24.

*Popovich* involved an intentional tort claim against a co-employee based on sexually harassing conduct. The victim first filed a workers' compensation claim with her employer seeking benefits for severe anxiety

and depression caused by the harassing conduct of the co-employee. *Popovich,* 811 P.2d at 380–81. Her employer agreed to settle the claim and paid her $3138 to cover her medical and counseling expenses, in exchange for her release of liability. *Id.* at 381. Thereafter, the employee filed a common-law tort action for intentional infliction of emotional distress against the co-employee who allegedly harassed her. *Id.* Without resolving whether the employee should have been able to recover workers' compensation in the first place, we addressed the effect of the Workers' Compensation Act on the tort claims asserted against the co-employee, and used the test developed in *Tolbert* in our analysis. *Id.* at 383.

Thus, neither of those two cases addressed the issue raised here, namely, whether an employer can be held liable for tort damages based on sexual harassment where the parties have not conceded that the co-employee's allegedly harassing acts were neutral. To resolve that question, we turn to the test as established in *Tolbert* and explained by *Popovich.*

### C.

■ The first category of assaults, those inherently related to employment, are those that have "an inherent connection with employment and emanate from the duties of the job." *Popovich,* 811 P.2d at 383 (internal quotation marks omitted). Included within this category are assaults originating in arguments over work performance, work equipment, delivery of a paycheck, or termination from work. 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 8.01[2][b], at 8–13 to –14 (2000).

In the past, a limited number of courts extended the scope of this category to include assaults growing out of the "friction and strain" of the workplace.[3] In these cases, although the subject of the dispute was unrelated to the employment, the injuries were found to be compensable under a theory that work brought the employees together and created the relations and conditions leading to the dispute. 1 Larson, *supra,* § 8.01[6][a], at 8–34 to –35. We referred to this doctrine in dicta in *Tolbert;* however, in subsequent cases, the court of appeals interpreted the "friction and strain" language to provide workers' compensation in any case where the parties became acquainted though their employment. *See Horodyskyj,* 5 P.3d at 335–36 (citing *Tolbert,* 759 P.2d at 23 n. 8)(reasoning that in such cases where the parties are acquainted with each other only through their employment, any injury resulting from a dispute between the employees arises out of employment because "work brought the employees together and created the relation and conditions resulting in the dispute"); *see also Moorhead,* 934 P.2d 861; *Rendon,* 881 P.2d 482.

■ This reasoning is unsound because it broadens the scope of coverage under the Act by eliminating the causality requirement needed for an injury to arise out of the employment. The nexus requirement is eroded where the test is improperly framed as "but for the bare existence of the employment" rather than "but for the conditions and obligations of the employment." 1 Larson, *supra,* § 8.02[2], at 8–48. As the leading treatise on the subject cautions, "[s]urely it would be going too far to say that every assault arises out of the employment if it can be proved that the acquaintance of the parties came about through the employment." *Id.* at 8–48 to –49. The mere fact that two employees met through their employment is not enough to cause offensive on-the-job conduct between them to fall within the "friction and strain" of the job. As a matter of policy,

---

3. The "friction and strain" cases originated with *Hartford Accident & Indemnity Co. v. Cardillo,* 112 F.2d 11 (D.C.Cir.1940). In that case, a warehouse employee was injured when, driven to desperation by being constantly taunted and called "Shorty," he yelled at his supervisor and was knocked down as a result. In finding that the employee's injuries were covered by the workers' compensation act, the court reasoned:

This view recognizes that work places men under strains and fatigue from human and mechanical impacts, creating frictions which explode in myriads of ways, only some of which are immediately relevant to their tasks. *Cardillo,* 112 F.2d at 17. Obviously, notions of what conduct could be expected to occur on the job have changed greatly in the ensuing sixty years.

sexual harassment is not a risk inherently connected to the employment relationship. The *Tolbert* dicta does not apply here.

■ The second category of assaults, those that are inherently private, are those in which "the animosity or dispute that culminates in an assault is imported into the employment" from claimant's or tortfeasor's domestic or private life, and "is not exacerbated by the employment." *Id.,* § 8.02[1][a], at 8–42. These torts have their origin in the private affairs of the claimant or the tortfeasor and are unrelated to their respective work-related functions. *Popovich,* 811 P.2d at 383. Cases falling under the rubric of category two typically center on disputes over love interests or spouses; they generally involve parties who know one another in private life or, having met on the job, elect to enter into a private relationship just as they might have had they met elsewhere, and subsequently develop a private quarrel. 1 Larson, *supra,* § 8.02[1][a], at 8–48 to 49. Under these circumstances, there is an insufficient nexus between the assault and the employment conditions or functions for the injury to arise out of employment. *Patel,* 793 P.2d at 636–37.

Courts have expanded the category of private assaults to include those in which the assailant and victim did not know each other prior to, or associate outside of, the employment and where the victim was specifically chosen or targeted. *See Padron v. Wackenhut Servs.,* 58 F.Supp.2d 1223, 1226 (D.Colo.1999)(finding the very utterance of allegations that the defendant specifically targeted plaintiff when he stuck his penis in her face and ear suggests that such acts are personal and private in nature); *Ferris,* 867 P.2d at 42 (stating that plaintiff presented strong evidence that the union president's unwelcome sexual advances were specifically targeted at her and not neutral in nature, and thus finding a genuine factual controversy regarding the employment nexus); *Stamper,* 797 P.2d at 786 (concluding that the employer's harassing and obscene verbal statements to, and unwelcome sexual touch-

ing of, plaintiff were specifically targeted at her and were not neutral in nature); *see also Anderson v. Save–A–Lot, Ltd.,* 989 S.W.2d 277, 288 (Tenn.1999)(stating that "it would be unreasonable to characterize [the harassing supervisor's] motivation as anything other than 'purely personal in nature' and not related to furthering the business of the employer"). Here, too, the nexus between the assault and the employee's work duties is insufficient to sustain a determination that the harassment arose out of employment. *Patel,* 793 P.2d at 636–37.

■ The third category of assaults comprises those with a neutral source. This category refers to injuries that are attributable to neutral and unexplained forces and are neither personal to either party nor distinctly associated with the employment. *Popovich,* 811 P.2d at 383. Previously we have applied the positional-risk or "but-for" test to determine whether such injuries arise out of the employment for the purposes of Workers' Compensation coverage. *Younger,* 810 P.2d at 649; *see also Stamper,* 797 P.2d at 785; *Patel,* 793 P.2d at 636. This test provides:

> An injury arises out of the employment if it would not have occurred but for the fact that the conditions and obligations of the employment placed claimant in the position where he was injured.... This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force....

1 Larson, *supra,* § 3.05, at 3–5 to –6 (emphasis omitted). Thus, an injury is compensable under the Act as long as it is triggered by a neutral source that is not specifically targeted at a particular employee and would have occurred to any person who happened to be in the position of the injured employee at the time and place in question. *Popovich,* 811 P.2d at 383.[4]

---

4. As noted above, *Tolbert's* conclusion that the sexual assault in that case was "neutral" rested on the parties' agreement that the co-employee's intentional assault did not stem from personal motivations and was not specifically targeted at her.

Therefore, if an employee's injuries result from an assault that is inherently connected to the employment or is attributable to neutral sources that are not personal to the victim or perpetrator, those injuries arise out of the employment for the purposes of workers' compensation and the employee is barred from bringing a tort claim against his or her employer. However, employee claims are not barred by the Workers' Compensation exclusivity provisions if the assault originates in matters personal to one or both of the parties.

### D.

In this case, the court of appeals concluded that the sexual harassment perpetrated by Karanian arose out of the employment pursuant to section 8–41–301(1), 3 C.R.S. (2000). *Horodyskyj*, 5 P.3d at 336. However, sexual harassment ordinarily does not fall into either category of assaults that are compensable under the Workers' Compensation Act. Acts of harassment are highly personal and, except in the most unusual cases like *Tolbert*, will fall into the category of inherently private assaults that "d[o] not arise out of the employment under any test." *See* 1 Larson, *supra*, § 8.02[1][a], at 8–42.

First, the harassing acts alleged in this case did not have an inherent connection to the employment because the acts did not originate in Horodyskyj's employment functions or in the "friction and strain" of employment. The court of appeals relied on our language in *Tolbert*, which we used to describe assaults caused by the "friction and strain" of the workplace, to find that Horodyskyj's injuries were compensable under the Act. Specifically, the court determined that Horodyskyj's injuries arose out of the employment because there were no indications that Horodyskyj and Karanian knew each other prior to the employment or that Horodyskyj was subject to Karanian's behavior only because of the employment. *Horodyskyj*, 5 P.3d at 336. As we explained above, we reject this reasoning because it impermissibly broadens the scope of coverage allowed under the Act by eroding the causality requirement needed for an injury to arise out of employment.

Second, Horodyskyj has alleged facts indicating that Karanian's harassing conduct was specifically targeted at him and, therefore, that his injuries were not caused by neutral forces. Horodyskyj's complaint alleges that Karanian's sexually harassing conduct originated in personal matters unrelated to their respective work functions. In cases involving similar allegations, courts have found that the assaults were not neutral for the purposes of workers' compensation. *See, e.g., Ferris,* 867 P.2d at 42; *Stamper,* 797 P.2d at 786; *Patel,* 793 P.2d at 637.

In sum, Horodyskyj alleges that Karanian specifically targeted him and that the harassment was private and personal in nature. Such conduct neither originates in an employee's employment functions nor is attributable to neutral forces. There is an insufficient nexus between the conditions and obligations of employment and the injury to support a finding that the harassing conduct arose out of the employment. *See Stamper,* 797 P.2d at 785. We therefore conclude that Horodyskyj's common-law tort claims were improperly dismissed as being barred by workers' compensation exclusivity.

### E.

In addition to the fact that these sexual harassment claims fail to satisfy the test for workers' compensation coverage under our case law, there are policy reasons for concluding that these claims cannot be redressed through the workers' compensation system.

The Workers' Compensation Act of Colorado was enacted to "assure the quick and efficient delivery of disability and medical benefits to injured workers." § 8–40–102(1), 3 C.R.S. (2000); *see also Popovich,* 811 P.2d at 384 (explaining that the Act is designed to compensate an injured employee for work-related injury or disease, associated medical costs, and the concomitant loss of earning ability); *Frohlick Crane Serv., Inc. v. Mack,* 182 Colo. 34, 38, 510 P.2d 891, 893 (1973)(stating that the primary purpose of the Act is to afford compensation for job-related injuries); *Byrd v. Richardson–Greenshields Sec., Inc.,* 552 So.2d 1099, 1104 (Fla.1989)(noting that workers' compensation

addresses purely economic injuries, such as lost wages, but does not address the intangible injuries to personal rights that are suffered by victims of harassment). Nothing in the Workers' Compensation Act suggests that it is intended to cover injuries resulting from sexual harassment. Nowhere is sexual harassment expressly addressed in the Act.

In contrast to its silence in the Workers' Compensation Act, our legislature has specifically enacted legislation designed to address harassment in the workplace. The Colorado Anti Discrimination Act makes it a discriminatory or unfair labor practice for an employer "to refuse to hire, to discharge, to promote or demote, to harass during the course of employment, or to discriminate in matters of compensation against any person otherwise qualified because of disability, race, creed, color, sex, age, national origin, or ancestry." § 24–34–402(1)(a), 7 C.R.S. (2000); *see also Brooke v. Rest. Servs.*, 906 P.2d 66, 69 (Colo.1995)(noting that the Act is intended to eradicate discriminatory practices by employers). The Anti Discrimination Act also prohibits both employers and employees from aiding, abetting, or attempting to commit such discriminatory or unfair labor practices. § 24–34–402(1)(e)(I), (III). In addition to Colorado law, Title VII of the Civil Rights Act of 1964 prohibits discrimination in the form of sexual harassment. 42 U.S.C.S. § 2000e et seq.[5]

■ In light of these state and federal anti-discrimination laws, we determine that sexual harassment such as that at issue in this case does not fall within the purview of the Workers' Compensation Act. As the Florida Supreme Court explained in *Byrd:*

> The clear public policy emanating from federal and [state] law holds that an employer is charged with maintaining a workplace free from sexual harassment. Applying the exclusivity rule of workers' compensation to preclude any and all tort liability effectively would abrogate this policy, undermine the [state Civil Rights

Act], and flout Title VII of the Civil Rights Act of 1964.

552 So.2d at 1104. Accordingly, sexual harassment claims are appropriately brought under the Colorado Anti Discrimination Act and Title VII of the Civil Rights Act, rather than under the Workers' Compensation Act, since these statutes were designed to address workplace harassment. *Accord Ferris*, 867 P.2d at 42 (concluding that a sexual harassment claim brought under the Colorado Anti Discrimination Act was not precluded by the exclusivity provisions of the Workers' Compensation Act). Indeed, in the typical case to bar a sexual harassment claim under the exclusivity provisions of the Workers' Compensation Act would be to thwart the strong public policies against sexual harassment. It would ignore the reality that many injuries stemming from sexual harassment will not result in any disability for which workers' compensation is available, leaving those victims without a remedy. Moreover, cumulative remedies, such as common-law claims, are available to victims of sexually discriminatory conduct in the workplace. *See, e.g., Brooke*, 906 P.2d at 68–70.

Several other jurisdictions have relied on similar policy grounds to hold that sexual harassment and related tort claims are not barred by workers' compensation statutes. *See, e.g., Byrd*, 552 So.2d at 1102–04 (finding that workers' compensation should not shield an employer from tort liability based on sexual harassment, because this would abrogate the policies behind sexual harassment laws that attempt to eradicate sexual harassment from the workplace); *Coates v. Wal–Mart Stores, Inc.*, 127 N.M. 47, 976 P.2d 999, 1005 (1999)(concluding that employers are responsible for maintaining a workplace free from sexual harassment, and thus, exclusivity provisions of the workers' compensation act do not prohibit employees from raising claims outside of the act); *Anderson*, 989 S.W.2d at 288–89 (noting that public policy considerations support the court's holding that sexual harassment legislation, not the workers' compensation act, is the appropriate avenue of

---

**5.** Title VII of the Civil Rights Act of 1964 applies only to employers with fifteen or more employees. *See* 42 U.S.C.S. § 2000e(b)(2001). However, our state anti-discrimination act contains no

such limitation. *See Colorado Civil Rights Comm'n v. Travelers Ins. Co.*, 759 P.2d 1358, 1361 n. 5 (Colo.1988).

relief for victims of sexual harassment). These cases reinforce our conclusion that sexual harassment should not be covered by workers' compensation since workers' compensation laws fulfill different statutory purposes than do statutes enacted to address workplace sexual harassment.

### III.

Because we have concluded that these sexual harassment and related tort claims are not barred by the exclusive remedy provisions of the Workers' Compensation Act, we need not address the petitioner's second issue on appeal concerning whether workers' compensation exclusivity bars claims based on intentional torts committed by an employer.

### IV.

For the reasons stated above, we determine that the court of appeals erred in concluding that Horodyskyj's tort claims were barred by the exclusive remedy provisions of the Colorado Workers' Compensation Act. We conclude that his sexual harassment and related tort claims are not compensable under the Act. We reverse the judgment of the court of appeals and remand the case for proceedings consistent with this opinion.

JUSTICE BENDER does not participate.